**UNITED STATES v. KOON WAH LEE.**

**Cr. No. 10048.**

District Court, D. Hawaii.

Nov. 14, 1947.

Ray J. O'Brien, U.S.Atty., and Maurice Sapienza, Asst.U.S.Atty., both of Honolulu, T. H., for plaintiff.

Herbert K. H. Lee, of Honolulu, T. H., for defendant.

John E. Parks, of Honolulu, T. H., for claimant informer.

METZGER, Judge.

Koon Wah Lee was indicted on two counts on October 2, 1946 for violating Section 4047(e) of Title 26 of the U.S.C.A. Int.Rev.Code, while he was acting as a zone deputy of the Internal Revenue office. He was tried on the indictment before a Grand Jury and convicted on one count thereof. Before sentence it was brought to the attention of the court that the indictment was so faulty as to be a nullity and the defendant was thereupon discharged. Thereafter he presented to the court a written waiver of indictment and was brought before the court on an Information charging a violation of said Section 4047(e). To the Information he plead nolo contendere and was sentenced to pay a fine of $1,500 and serve a year and a day in prison, execution of the prison sentence being suspended; the fine was paid.

In the trial under the void indictment one Paul Sui Foon Au was the chief witness and it was due to his testimony and corroborating testimony of other witnesses that a verdict of guilty was found on one count.

On June 26, 1947, the said Paul Sui Foon Au came into court through his attorney, John E. Parks, and filed a Motion for Judgment to award him one-half the fine imposed on and collected from the defendant. Thereafter, on July 22, 1947, the United States Attorney filed a similar motion praying that the Clerk of the Court pay to Paul Sui Foon Au $750, one-half of the fine money collected by the Clerk.

The two motions came on to final hearing on October 25, 1947 and thereafter both Attorney Parks and the United States Attorney's office filed briefs in support of their motions.

Notwithstanding that the United States Attorney's office had given its fullest endorsement and assistance to the claim of Paul Sui Foon Au that he be paid one-half the fine as an Informer and the testimony of Au and Mr. John Glutsch, a senior Special Agent in charge of Intelligence Unit of the Bureau of Internal Revenue, that he considered Paul Sui Foon Au the Informer in the case and entitled to one-half of the

fine, I do not believe from the evidence and for the following reasons, that Paul Sui Foon Au was an Informer within the contemplation of the law which awards to the Informer one-half of the fine imposed upon a conviction under the statute named, even though the statute does seem to presuppose that there is an Informer in every such case.

In his testimony upon hearing on his Motion Au stated, while under direct examination by his attorney, Parks:

"After Mr. Jardine had informed Mr. Glutsch about Koon Wah Lee's case, after Koon Wah Lee had been arrested, then I went to Mr. Glutsch's office and informed Mr. Glutsch with all the information attaching to the case. Then I came to the United States Attorney's office and went to the Grand Jury and an indictment was returned against Mr. Koon Wah Lee on the case."

Having heard Mr. Glutsch's testimony that he received his first information concerning the case from the United States Attorney's office and was directed by that office to see City and County Prosecuting Attorney Fairbanks who had imparted to the United States Attorney's office that in the investigation of Honolulu police graft cases Paul Sui Foon Au had made statements while under examination by J. Jardine, an investigator of the City and County Prosecuting Department, which disclosed that Koon Wah Lee had extorted from him the sum of $7,000 under pretext that he would adjust, compromise and settle prospective Federal tax claims against him, Mr. Glutsch then called on Prosecutor Fairbanks and obtained from him written statements made by Paul Au at J. Jardine's home on May 5, 1946 and at the office of the Public Prosecutor on May 6, 1946. Mr. Glutsch then arranged that Mr. Fairbanks should send Au to his office for questioning. This arrangement was carried out and Au called at Glutsch's office where Glutsch presented the statements to him and had him read them. He then asked Au if they were true and correct and made him stand up and take an oath that the answers given therein by him were true and given freely and voluntarily, which oath Glutsch administered. From there on Au was a willing and effective witness for the Government in the attempted prosecution of the case against Koon Wah Lee.

Excerpts from the testimony of Mr. Glutsch, given in support of the Motions, are as follows:

"The Court: Well, I'd like to have more of the circumstances. Where did you first get your information, from City and County officials?

"The Witness: Mr. Towse called me up and told me that there was a violation—

"The Court: Mr. Towse, the Assistant U. S. Attorney?

"The Witness: That's correct.

"The Court: He called you up and what information did he give you?

"The Witness: He told me to see Mr. Fairbanks, the City and County Prosecutor, that he had information that came within the purview of our work, and that I was to see him and get the facts from him.

"The Court: And did you do that?

"The Witness: I did that.

"The Court: And you got the facts from Mr. Fairbanks, and then what transpired?

"The Witness: He gave me a statement that was given by Paul Au.

"The Court: To him?

"The Witness: To him. I got a copy of that. Then I asked Mr. Fairbanks would he have Mr. Paul Au come to my office, and he did. And that is how I met him.

"The Court: Paul Au came there under the direction, the order of Mr. Fairbanks?

"The Witness: Well, I assume so, Judge.

"The Court: Was Paul Au under investigation by Fairbanks or what was this relation?

"The Witness: He was, I believe he was one of the principal witnesses for Mr. Fairbanks in connection with his investigation of vice conditions and corruption in the Police Department.

"The Court: He wasn't a defendant?

"The Witness: No sir, not as far as I know.

"Mr. Parks: That is true.

"By Mr. Lee (Attorney Herbert K. Lee):

"Q. In other words, Mr. Glutsch, you got your information about Au from the City and County Prosecutor's Office, that is when ' e first came into the picture? A. Yes, I wouldn't say that I received any information—

"Q. You got that statement from Mr. Fairbanks? A. I told Mr. Fairbanks— Mr. Fairbanks then gave me a copy of that statement that he took.

"Q. And in that statement, of course, Au had told Fairbanks that he had given Koon Wah Lee $7,000, is that correct? A. That's right."

"The Court: Now, in that connection, the information supplied to you through Mr. Towse, Mr. Fairbanks, Mr. Jardine, or any other source, was it through that information that you were brought into contact with Mr. Au, and did that information enable you to draw from him facts in the case?

"The Witness: Yes, sir.

"The Court: That you afterwards used through his testimony?

"The Witness: Yes, sir. I might, if I may explain that further—the statement that Mr. Fairbanks gave me was taken by Mr. Jardine. Mr. Fairbanks gave me this statement and then I had Mr. Au in my office and had him read it. And after he read it, I asked him was it true and correct, and made him stand up and take the oath, and I acknowledged the oath on that particular statement. I asked him if there was anything that he wanted to change, he had the right to do that before swearing to the facts.

"The Court: You swore him—

"The Witness: Yes.

"The Court: —to the statement?

"The Witness: He signed it and swore.

"The Court: Without change?

"The Witness: That's correct.

"The Court: And he was sewed up to that statement at that time?

"The Witness: Yes, sir."

■ My view is that the statute with reference to identifying and determining an Informer and giving him judgment for one-half of the fine imposed upon a defendant should be liberally and fairly construed but not with such laxity as to bring in as an Informer a person who from extraneous personal reasons imparts information to a third person involving his tax evasion and then when later confronted with such statements by a Federal tax law enforcement officer consents to and does become a prosecuting witness. I do not hold that an Informer should necessarily be the first person to give to the Government information of the crime, nor do I hold it incumbent that he voluntarily come forward to the prosecuting agency with information out of which a valid charge results, but I do hold that when he merely imparts information to a third person (a city government investigator who is known to be working on an entirely different case) for the purpose of serving his own interests in matters entirely apart from the prosecution of the culprit on the charge eventually placed against him, and by reason of such information being conveyed through a fourth party to the United States Attorney who sets in motion an investigation through an Internal Revenue investigating agent who, upon inquiry and examination, after arrest of the culprit, requiring the maker of the statement to swear to the truth of all his statements made to the third party, and the affiant thereafter consents to go before the Grand Jury as a witness and becomes chief witness in a void trial upon a void indictment, that person is not an Informer who is entitled to one-half the fine imposed on the culprit who thereafter waives indictment and pleads nolo contendere at a subsequent arraignment on an Information charging the crime for which the void indictment was intended.

Following are excerpts from the testimony of Paul Sui Foon Au, given on October 25, 1947:

"The Court: Well, I wanted to get a clearer picture of your testimony. Now, as I get it from you, Au, you went to Jardine and Cederlof of the City and County Prosecuting Department first, is that right?

"The Witness: Yes, sir.

"The Court: They were making some investigations relating to police administra-

tion down in your part of town at that time, were they?

"The Witness: Yes, your Honor.

"The Court: You went up and told your story to them, is that right?

"The Witness: Yes, your Honor.

"The Court: And then Mr. Glutsch's name was brought into it and Mr. Glutsch—Mr. Glutsch, of the Internal Revenue—you offered to go to Mr. Glutsch, is that right?

"The Witness: Yes, your Honor.

"The Court: They said, No, we will take care of that; Jardine and Cederlof said, we will attend to that, did they?

"The Witness: Yes, your Honor.

"The Court: And you didn't go to Glutsch then?

"The Witness: Not on this matter.

"The Court: It was after Glutsch came in to investigate your taxes that you told him, was it, or what?

"The Witness: I went to Mr. Glutsch after Mr. Koon Wah Lee was arrested.

"The Court: Oh. Koon Wah Lee was arrested in the meantime for this same charge, was he?

"The Witness: Yes, your Honor.

"The Court: It must have been on information that the United States prosecuting officers got from Cederlof and Jardine?

"The Witness: This arrest was made by Mr. Cederlof or Mr. Jardine or the both of them.

"The Court: Well, they wouldn't arrest Koon Wah Lee for violating a United States Law. They would only arrest him for violating some Territorial law. You know that?

"The Witness: What I know, your Honor, was that they arrested him on my information. They telephoned me.

"The Court: Well, they arrested him on what charge?

"The Witness: On this $7,000 business.

"The Court: Who did?

"The Witness: Mr. Jardine and Mr. Cederlof."

Cross examination by Attorney Herbert K. Lee:

"Q. As a matter of fact, Mr. Au, you weren't telling the truth to the Judge when you said you weren't promised immunity by the Prosecutor's Office? A. When I talked to them I was not promised immunity, but I did ask them, I did, I would not expect any frame-up, I would not expect any squeeze play. And that was what I started out with. I would not like to have somebody brought something against me which I did not do or which I had no part of it.

"Q. Well, as a matter of fact, you had been conducting a house of prostitution and a gambling place? A. Yes. As far as that, I made an agreement with them if any penalty came to me I would take it, as far as I had anything to do with it. But where I had nothing to do with it, I wanted to see that it won't happen to me if I was not in it.

"Q. So what you were afraid of, of the prosecution of these offenses that you just mentioned about, about keeping a house of prostitution and gambling? A. Well, I run a hotel with sporting girls, rented rooms. I went out. I would not like to see that anybody frame me up by having me have something to do to transport those girls which I have never did.

"Q. Were you afraid of the Mann Act, is that what you mean? A. And gambling, if I didn't have something to do with the thing I would not like to see it happen, come to happen to me."

The whole thing lacks essential bona fides and there is no evidence that Paul Au would have been even a witness had he not involved himself in disclosures he intended to aid himself in police corruption investigations, which disclosures were conveyed to Federal prosecutors, with his written statements which bound him to the part he played in Koon Wah Lee's prosecution.

In view of these findings, I conclude that Paul Sui Foon Au was not an Informer entitled to be paid one-half of the fine assessed against Koon Wah Lee for violating his trust as an officer of the Government, and the Motions for Judgment in his favor by the United States Attorney, as well as by the claimant himself, are denied and dismissed.