92 N.J. Super. 228 (1966)
222 A.2d 761
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHESTER OLIVER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1966.
Decided August 23, 1966.
*230 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Morris Spritzer argued the cause for appellant (Messrs. Spritzer & Spritzer, attorneys).
Mr. William D. Danberry, Assistant County Prosecutor, argued the cause for respondent (Mr. Edward J. Dolan, Middlesex County Prosecutor, attorney).
*231 The opinion of the court was delivered by CONFORD, S.J.A.D.
The jury found defendant guilty of bookmaking between April 13, 1964 and May 27, 1964 in New Brunswick, in violation of N.J.S. 2A:112-3. He was sentenced on June 7, 1965 to State Prison for a term of not less than one nor more than two years. Defendant appeals from the judgment of conviction.
The principal ground of appeal is the trial court's refusal to enforce defendant's demand that the State's main witness, State Trooper Decker, testify to the identity of an alleged informer who accompanied him on three occasions to the tavern at which, according to Decker's testimony, he saw defendant engage in the conduct upon which the indictment was based. The trial court's ruling was based upon N.J.S. 2A:84A-28 (L. 1960, c. 52, § 28) which provides that a witness has a privilege to refuse to disclose the identity of a person who has furnished the law enforcement authorities information purporting to disclose a violation of law unless the judge finds that the identity of the informant has already been disclosed or that such disclosure "is essential to assure a fair determination of the issues." This statute is declaratory of the common-law rule. State v. Burnett, 42 N.J. 377, 380 (1964). See Morss v. Forbes, 24 N.J. 341, 360-362 (1957).
While stating that "the problem before us is not without great difficulty," the trial court ruled that "this testimony [identity of the informer] is not essential to assure the fair determination of the issue."
State Trooper Decker testified on direct examination that he visited DelBono's tavern on April 14, April 30 and May 4, all in 1964, sat at the bar, and on each occasion saw defendant accept money and a slip of paper from a person or persons who came into the place. On the second and third occasions the person specified a horse, the number of a race, a race track, and an amount of money, presumably to be bet on the race. Decker thereafter obtained a search warrant and raided the bar on May 26, 1964 in the company of two detectives. Decker said that while the search warrant was being read to *232 defendant he saw the defendant drop a slip of paper to the floor. Upon examination this was found to contain letters and symbols identified by the officer as bookmaking notations. One of the detectives testified that a search of defendant's person revealed another slip with betting notations and some $2,100 in cash.
Defendant testified in his own defense and denied that any of the actions attributed to him as having taken place on April 14, April 30 and May 4 ever occurred. He denied dropping any slip to the floor on May 26 and identified the slip so designated by Decker as one taken from his wallet by one of the detectives and representing a notation of a "daily double" bet he had just agreed with one DeBonis, a bartender, to place for the latter as a favor at the Garden State track later that afternoon. DeBonis testified in corroboration thereof. Defendant explained his possession of the money as representing funds his aged father had recently turned over to him through a nurse's aide who was attending the father in connection with a heart attack just prior to the latter's entering a hospital. The nurse's aide testified in support of defendant's account of the matter.
On cross-examination of Decker it was developed that he was accompanied to the tavern by an informer on April 14, April 30 and May 4; that the informer sat on a stool alongside him on each occasion; that afterwards they went to the trooper's car where the latter reduced his observations to notes from which he refreshed his recollection at trial; that the trooper and the informer discussed their respective observations after each such incident; and that the informer had not seen everything the trooper claimed to have seen. By other testimony in the case it was shown that the informer had acted as an undercover investigator for the State Police for some time on a casual or intermittent basis, being paid irregularly for his services. He had done preliminary investigative work on the DelBono tavern before the visit of April 14.
During cross-examination defendant's counsel asked Decker for the name of the informer, and upon his refusal, moved the *233 trial court to compel disclosure. The motion was renewed twice as more information on the subject was elicited. The argument and colloquy on the motion and its renewals were extensive. While not clearly articulated as such, the purport of defendant's motion, and so recognized by the prosecutor and the trial court, was that the State should reveal the name of the informer or suffer dismissal of the prosecution. The contention was that defendant's right to a fair trial demanded the revelation of one known to the State who was an eyewitness of the actions of the defendant constituting a substantial element of the charges made against him by the State. It was argued that defendant had the right to interview that person and adduce his testimony as a witness to attack the substance or reliability of the testimony of the State's witness Decker.
We conclude that the circumstances here presented required the trial court to honor the defendant's motion, as "essential to assure a fair determination of the issue[s]" of defendant's guilt of the charge on which he was being tried, within the exception to immunity from disclosure set forth in N.J.S. 2A:84A-28.
It must be emphasized here not only that the informer was present at three of the four instances (the three most incriminating) where the State's evidence indicated bookmaking activity by defendant at the tavern, but also that the informer was an eyewitness to defendant's activities on the said occasions  activities which were the heart of the State's case against him. As the trial court stated during the argument on the motion, "his prior testimony [State Trooper Decker] * * * indicates very clearly that he [the informer] was an eye witness and that is what gives rise to this difficult legal problem * * *. The State has admitted that he is an eye witness," to which the prosecutor commented: "Yes sir, there is no question about that."
We take the view that defendant's position at trial was clearly right and that the weight of the best reasoned cases on the point support him. The informer was one of three people  defendant, the trooper and the informer  who could *234 testify on personal knowledge as to what defendant was doing on the occasions mentioned. The testimony of the trooper and the defendant was squarely in opposition. Dictates of elementary fairness required affording defendant access to the informer's testimony on the matter through revelation of his identity. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) ("The informer was the only witness in a position to amplify or contradict the testimony of government witnesses." (at p. 64, 77 S.Ct., at p. 630)); Portomene v. United States, 221 F.2d 582 (5 Cir. 1955); People v. McShann, 50 Cal.2d 802, 330 P.2d 33 (Sup. Ct. 1958); And see State v. Burnett, supra (42 N.J., at p. 386 (1964)); Rugendorf v. United States, 376 U.S. 528, 537 et seq., 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) (dissenting opinion for four justices dealing with merits of question; opinion for majority substantially avoids question on procedural ground). See extensive annotation in 76 A.L.R.2d 262 (1961).
A comprehensive discussion of the so-called informer's privilege is not here necessary in view of the exposition of the subject in State v. Dolce, 41 N.J. 422 (1964), and both the Appellate Division (79 N.J. Super. 242 (1963)) and Supreme Court opinions in State v. Burnett, supra. See also Morss v. Forbes, supra (24 N.J., at pp. 360-362). Certain of the observations of the Supreme Court in State v. Burnett are particularly pertinent in the present context. That case involved the question whether there must be disclosure of the name of an informer whose information is relied upon by the police for probable cause in the conduct of a search under attack by defendant. While the Supreme Court held that the Appellate Division correctly dismissed the defendant's contention as to the right of disclosure on the ground he had not properly asserted it at trial, the court went on to draw a clear distinction between the position of a defendant who seeks disclosure for the purposes of suppression of evidence and one who needs it in relation to proof of the issue of guilt of the *235 crime being prosecuted. In comparing the respective situations the opinion of the Chief Justice said:
"We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth." (42 N.J., at p. 386)
In our view, the foregoing comments point toward the correct decision of the case at hand  one where the defendant seeks the identity of the informer so that his testimony may cast light on the issue of his guilt or innocence of the charge laid against him by the State.
Reversal in the present case will not affect the substantial aid to law enforcement consisting of instances where the informer confines his role to that of informant to the authorities of the conduct of illegal activities without the incidence of actual observation by the informer of the particular acts of the defendant which form the foundation of the accusation under trial. In such a situation, as has been frequently observed, the identity of the informant can be withheld by the prosecution in full consistency with the necessity for according the defendant a fair trial. See, e.g., Miller v. United States, 273 F.2d 279 (5 Cir. 1959), certiorari denied 362 U.S. 98, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960); People v. McShann, supra (330 P.2d, at p. 36, 2d col.). But, as Justice Traynor went on to state for the California court in the latter case (ibid.):
"* * * [W]hen it appears from the evidence that the informer is a material witness on the issue of guilt and the accused seeks disclosure on cross-examination, the People must either disclose his identity or incur a dismissal."
While in many of the cases wherein disclosure of the informer was compelled the informer played a part in the execution of or arrangements for the criminal act involved, the rationale of the decisions, express or implicit, is not that disclosure is based on the fact of participation, etc., per se, but *236 rather on the circumstance that the informer's relationship to the alleged criminatory events has rendered him a material witness on the issue of defendant's guilt. This is well illustrated by the leading decision on the subject, Roviaro v. United States, supra, a federal prosecution, inter alia, for the transportation of heroin knowing it to be unlawfully imported. Government officers there testified that they met the informer, searched him and his car, and secreted one of their number in the trunk of the car. The informer then picked up defendant and drove around with him. The officer in the trunk testified that he heard defendant greet the informer, direct his driving, ask him about money owed defendant, refer to "three pieces" and order him to stop the car. Defendant was observed through an opening in the trunk to walk to a tree, pick up a small package and return to the car. The officer heard defendant say, "Here it is. I'll call you in a couple of days." Defendant left the informer with a package containing heroin, and the agents arrested defendant later in the day.
Roviaro was convicted at a trial wherein he was unsuccessful in moving for disclosure of the informant's identity. The Supreme Court reversed, holding the possible testimony of the informant might have been helpful to defendant in several respects. While recognizing the general privilege of non-disclosure in the furtherance of the public's interest in effective law-enforcement the court listed as one of the limitations of the principle that which "arises from the fundamental requirements of fairness" (353 U.S., at p. 60, 77 S.Ct., at p. 628). It went on to say: "Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must give way." (at pp. 60-61, 77 S.Ct., at p. 628)
The application of that rule to the case before it was explained by the court as follows:
"The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the *237 defense. So far as petitioner knew, he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he `transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.
Finally, the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than petitioner himself, who could controvert, explain or amplify Bryson's report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment." (353 U.S., at pp. 63-64, 77 S.Ct., at pp. 629-630)
It is noteworthy also that in Rugendorf v. United States, supra, where the four justices of the Supreme Court who passed squarely upon the merits of the claim for disclosure held in favor of the defendant on the point, the informer was not indicated to be a participant in the crime nor one who introduced the defendant to the police investigators but was nevertheless a potential material witness in aid of the defendant's case.
Thus, the ever-present necessity in each case of resolving the balance of interest between society's need to hide the identity of the informer for law-enforcement purposes and that of the defendant for a fair trial (Roviaro, 353 U.S., at p. 62, 77 S.Ct., at p. 623; State v. Burnett, supra, 42 N.J., at p. 385) will ordinarily suggest a determination in defendant's favor if he has no other ready way of ascertaining the informer's identity, there is a clear showing of the possibility that the informer's personal knowledge concerning the critical events may be of material significance on the question of defendant's *238 guilt, and no legitimate contrary factor impresses the discretionary judgment of the court that the ruling should be otherwise. See Gilmore v. United States, 256 F.2d 565 (5 Cir. 1958) ("In this testimony [proposed, of informer] there might have been the seeds of innocence, of substantial doubt, or overwhelming corroboration. As the inferences from it covered the full spectrum from innocence to guilt, the process of truth-finding, which should be the aim of every trial, compelled its disclosure," at p. 567, 2d col.); United States v. White, 324 F.2d 814 (2 Cir. 1963) ("We fully realize that a special employee's role in the apprehension of narcotics violators is such that normally he would not be expected to come to the rescue of one whose arrest he has initiated. Nevertheless, appellant might have developed something from Lynn [informer] which could have tipped the scales in his favor." at p. 816, 1st col.)
See also People v. Durazo, 52 Cal.2d 354, 340 P.2d 594, 596, 76 A.L.R.2d 257 (Sup. Ct. 1959); People v. Williams, 51 Cal.2d 355, 333 P.2d 19 (Sup. Ct. 1958); Crosby v. State, 90 Ga. App. 63, 82 S.E.2d 38 (Ct. App. 1954); State v. Boles, 246 N.C. 83, 97 S.E.2d 476 (Sup. Ct. 1957); But cf. Brown v. State, 135 Tex. Cr. 394, 120 S.W.2d 1057 (Ct. Crim. App. 1938).
The reported New Jersey decisions, although recognizing the force of the Roviaro case as a precedent in this area, State v. Burnett, supra (42 N.J., at p. 380; 79 N.J. Super., at p. 246), have not yet had occasion to pass definitively on the main question presented on this appeal beyond the strong intimation in both the opinions of this court and the Supreme Court in Burnett, supra (see quotation from Supreme Court opinion, supra) that where the issue implicated by the demand for disclosure is that of defendant's guilt, the law-enforcement policy against concealment of the informer's identity must give way to the need for a truthful verdict.
In State v. Dolce, supra, where defendant's demand for the name of an informer was based upon the alleged materiality of the informer's testimony to the defense of entrapment, the *239 court held that a prerequisite to disclosure was that the defense be asserted in good faith "with some reasonable factual support" (41 N.J., at p. 436). The court found the prerequisite there lacking in that the known facts negated a good defense of entrapment.
In State v. Booker, 86 N.J. Super. 175 (App. Div. 1965), the court rejected an appeal based upon a trial court's failure to order disclosure of an informer's identity on the ground that defendant had never made any demand at trial for such disclosure. The court also noted that there were affirmative indications that defendant knew the name of the informer and had made no effort to subpoena him before trial, thereby weakening the appellate argument that had the informer's identity been known trial counsel would have called him to establish that the State's case against him was one of mistaken identity. Although the court also rejected an appellate argument that the statutory privilege is necessarily inapplicable to informers present when the crime was committed, it did point out that such presence is one of the facts to be taken into consideration (86 N.J. Super., at p. 179). In the instant case, of course, there is not merely the "presence" of the informer, but the obvious fact, conceded by the State and the trial judge, that he was an eye-witness to three of the four transactions advanced by the State's witnesses to establish defendant's guilt. Moreover, there is no contention here that defendant did not make adequate demand for disclosure at trial or sufficiently demonstrate his need therefor to the trial judge. The trial judge here recognized the fact of such need, saw the problem as "difficult," but in effect concluded that the policy for non-disclosure was controlling. We think he erred as the statutory exception must be applied where disclosure is needed for the "fair determination" of the issue of defendant's guilt. That need by defendant here is inescapable.
It should be noted that under the authorities the failure of the trial court to accede to defendant's request must be accounted prejudicial notwithstanding the inherent uncertainty as to the extent to which the informer, if called, would *240 have supported the defense or weakened the prosecution. As indicated by the cases quoted above, the possibility that the informant's testimony might weaken, if not completely contradict, that of the State's witnesses on any substantial factual issue relevant to defendant's guilt, is sufficient to render reversible an otherwise unwarranted refusal to grant a motion for disclosure. As stated by the Supreme Court in the Roviaro case, "The desirability of calling John Doe [the informer] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." (353 U.S., at p. 64, 77 S.Ct., at p. 629) The court had just stated that "John Doe's possible testimony was highly relevant and might have been helpful for the defense." Ibid. (emphasis ours) Moreover, as noted earlier in this opinion, the main state witness in the present case admitted that upon comparing his observations with those of the informer they were in some respects not in accord.
We are not in agreement with the defendant's additional contention, pressed at trial as well as on appeal, that the informer in the present case was not an "informer" within the purview of the common-law and statutory privilege because he was paid by the police. So long as he was not a regular member of the police force he comes within the uniformly recognized category of "special agents" or police collaborators covered by the privilege. While we know of no decision expressly making the point it is implicit in almost all the cases, federal and state, involving people of such description, and our Supreme Court has recently expressed accord by inference. State v. Dolce, supra (41 N.J., at p. 435), referring to "The public interest to be served * * * by employing investigative agents who have, or acquire by deception or otherwise, access to persons engaged in such activities * * *." See also 8 Wigmore, Evidence (rev. 1961), § 2374, p. 762: "Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages *241 others from entering into a like relationship." But compare Morss v. Forbes, supra (24 N.J., at p. 362).
Defendant has also argued that certain comments by the trial court during trial were prejudicial. We doubt actual prejudice in the light of the exceptionally fair manner in which the judge conducted the case as a whole. In view of our determination of the main issue argued the point needs no further discussion.
The judgment is reversed. At any new trial the State will be directed to reveal the identity of the informer at pain of having the entirety of Trooper Decker's testimony concerning the events of April 14, April 30 and May 4, 1964 stricken or disallowed. State v. Burnett, supra (42 N.J., at pp. 379-380).