**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles L. MILLER, Defendant-Appellant.**

**No. 73-1931.**

United States Court of Appeals, Tenth Circuit.

June 17, 1974.

---

Richard Meyer, Asst. U. S. Atty (Robert J. Roth, U. S. Atty., Bruce E. Miller, and E. Edward Johnson, Asst. U. S. Attys., on the brief), for plaintiff-appellee.

Ernest C. Ballweg, Prairie Village, Kan., for defendant-appellant.

Before HILL, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a conviction for assault with intent to commit murder, in violation of 18 U.S.C. § 113(a).

Appellant Charles L. Miller and his co-defendant, Curtis Allen Kochis, were indicted by a federal grand jury and charged with assaulting a fellow inmate in the federal penitentiary at Leavenworth with the use of a dangerous weapon, i. e. an incendiary device. Both appellant and his co-defendant Kochis pleaded not guilty to the charge. Following an Omnibus Hearing on February 8, 1973, they were tried by a jury in the United States District Court for the District of Kansas. Appellant was found guilty. Kochis was found not guilty. Appellant was sentenced to a maximum of ten years to be served consecutively to any other sentence which he was serving.

The government's evidence showed that the victim of the attempted murder, one Johnny Bourgeois, was set on fire while asleep in his prison cell at Leavenworth. Bourgeois testified that he woke up on fire. His bunk bed and body were in flames and he jumped out of bed so that his cellmate could put out the fire. As he jumped out of the bed, two nearby containers which looked like "Tang" jars and which apparently contained a flammable liquid immediately spilled, causing the fire to spread throughout the cell. Bourgeois testified that when the door of his cell was opened, he saw appellant Miller running away from the cell.

Bourgeois' cellmate, one Daniel Enoch, testified that, on the morning of the fire, he was awakened by Bourgeois' screams and that he jumped out of bed,

knocked the cell door open and pulled the burning victim into the hallway to beat out the flames. Enoch further testified that the cell door appeared to have been tied and that, as he struggled to open it, he saw appellant Miller squatting down, holding the door.

Frederick Thomasser, also an inmate, testified that appellant had asked him to get some liquid paint thinner from the prison machine shop, where Thomasser worked. Thomasser obtained the solvent, put it in a glass "Tang" jar and gave it to another inmate, one Lester Meddy. Meddy testified that on the morning of August 16, 1972, appellant asked him to go to the machine shop and pick up a jar of "liquid" from Thomasser. Meddy did so and subsequently gave the liquid to appellant at about 8:30 A.M. on August 16, less than an hour before the fire.

Another government witness, inmate Burl Gene Maret, testified that immediately before the fire, he saw appellant and another inmate approach the victim's cell, throw something inside it, light a torch-like object and throw it afterwards inside the cell. Maret also testified that, on the night before the fire incident, he had had a conversation with appellant in which appellant related that he and Johnny Bourgeois had been in an argument and that appellant wanted Maret to give him a knife. Maret testified that he did not give appellant a knife.

Other government witnesses, correctional officers at Leavenworth, testified that on the morning of the fire, appellant had been found "fooling" around with a control lever device which locked certain cell doors, including that of the victim, Johnny Bourgeois, and that after the fire, pieces of charred glass from a container were found inside the burned-out cell.

The defense was that of alibi. A fellow inmate testified positively that he saw appellant in the prison mess hall about 15 seconds after the fire broke out and that he waved and yelled at appellant at that time.

Another inmate testified that he saw two men, who were either Mexican or black, running from the direction of the burning cell; that he had never seen these men before and that neither of these men was appellant Miller.

Appellant denied any involvement in the fire and also denied that he had requested either paint thinner from Thomasser or a knife from Maret.

Thus, the salient facts of the case were in dispute so that the result was based on the credibility of the witnesses.

In seeking a reversal appellant's reliance is on the following:

1. Alleged error of the trial court in taking judicial notice of the fact that the penitentiary at Leavenworth is under the jurisdiction of the United States Government.

2. The alleged error resulting from the district attorney asking a witness on cross-examination whether he was a member of the "Church of the New Song."

3. The alleged error of the trial court in not striking the testimony of a government witness, an inmate of the penitentiary named Maret, who appellant claimed was an informer; inasmuch as the government failed to identify him as an informer, appellant claims that he is entitled to have this sanction imposed.

4. The alleged error of the trial court in denying appellant's motion for a mistrial based on allowing the government witnesses to be kept together during the trial.

5. The failure of the government to make a pretrial disclosure of photographs depicting the scene and circumstances of the alleged offense. It is said that this violates the Omnibus Hearing order.

## I. Judicial Notice of United States Jurisdiction

We perceive no error in the trial court's taking judicial notice of the fact

that the United States Penitentiary at Leavenworth is within the special territorial jurisdiction of the United States. The thrust of appellant's objection to this is that the trial court did it on its own motion.

■ The assault and the fire unquestionably occurred inside the walls of the penitentiary, and where this is true the court may properly take judicial notice. *See* United States v. Floyd, 477 F.2d 217 (10th Cir. 1973); United States v. Carter, 430 F.2d 1278 (10th Cir. 1970); Hall v. United States, 404 F.2d 1367 (10th Cir. 1969); Markham v. United States, 215 F.2d 56 (4th Cir. 1954).

In Hayes v. United States, 367 F.2d 216 (10th Cir. 1966), we considered a similar case involving the prosecution of a prisoner at Leavenworth for murder of a fellow inmate. In determining whether the United States had exclusive jurisdiction over the Leavenworth penitentiary, we traced the history of the property on which the penal facility is presently located and found that a 1927 statute passed by the Kansas Legislature ceded to the United States exclusive jurisdiction over the land and institution at Leavenworth. This statutory enactment renders judicial notice of jurisdiction appropriate in the case at bar, even though such notice was taken upon the court's own motion.[1]

## II. *Cross-Examination of Defense Witness On Inflammatory Subject*

Appellant's next point that there was prejudice in the cross-examination of the defense witness as to his being a member of the "Church of the New Song" is also insubstantial. It is a contention which rests on the fact that Leavenworth and other penitentiaries have had riots which had been reputedly incited and precipitated by a group known as the "Church of the New Song." It is argued that the jurors were probably aware of the connotations arising from the name of this organization and that this created prejudice.

■ But the trial court sustained an objection to the form of the offensive question. This was followed by proceedings outside the hearing of the jury immediately following which the court admonished the jury a) to disregard all mention of the "Church of the New Song" and b) to withdraw from their consideration both the question posed and the response elicited. The court repeated this instruction at the conclusion of the evidence.

In view of the fact that the objectionable conduct of the district attorney was neither persistent nor prolonged, and in light of the protective measures followed by the trial court to disregard any evidence concerning the "Church of the New Song," we conclude that the judge's admonition was sufficient. The trial court was in a position to evaluate the effect of the question in the minds of the jury and to determine whether an admonition would effectively cure the problem. *See* United States v. Goodwin, 455 F.2d 710 (10th Cir.), cert. denied, 409 U.S. 859, 93 S.Ct. 146, 34 L.Ed.2d 105 (1972); Rogers v. United States, 411 F.2d 228 (10th Cir. 1969); Walton v. United States, 334 F.2d 343 (10th Cir. 1964).

## III. *Failure to Strike the Testimony of an "Informer"*

Unquestionably the government took the position that there was no informer in the case. This is evidenced by the Omnibus Order which was signed on February 8, 1972. There was a further hearing in court which was precipitated by the appellant's request of the court to review the statements of all government witnesses so as to ascertain whether the government was relying on information supplied by informers and, if so, to di-

---

1. We note here that the taking of judicial notice may have been superfluous since both appellant and appellant's counsel signed the Omnibus Hearing Report, which stipulated that the United States District Court for the District of Kansas "has jurisdiction to try the defendant for the offense charged."

rect the disclosure of their identities. A hearing was held on appellant's motion on February 26, 1973, and at that time the government reasserted its position that there were no informers and the court subsequently denied appellant's request.

Then, at the trial, during the defense counsel's cross-examination of the witness Maret, the following colloquy occurred:

Q: Mr. Maret, when were you first contacted by F.B.I. or prison officials with regard to this occurrence?

A: I contacted them.

Q: You went to them?

A: Yes.

Q: What did you advise them?

A: I advised them that I'd like to speak to Mr. Sharp.

Q: This gentleman here?

A: Yes sir.

Q: Now, was it at this time that you offered this story to him?

A: At that time I told him what I saw.

Q: And this was done of your own volition? You weren't requested to do this?

A: No.

The defense counsel did not object to Maret's testimony, but at the completion of it and outside the presence of the jury moved to strike the entire testimony on the contention that Maret was an informer, contrary to previous statements made by government counsel.

Appellant defines an informer as a person who voluntarily furnishes information to authorities as contrasted to persons who merely supply information after being interviewed and after a request for that information has been made. Based on the fact that Maret voluntarily contacted the F.B.I., appellant says that he is an informer, notwithstanding that he never actually stated that he was.

■ We disagree with appellant's contention that the sole criterion for determining whether a witness is an informer is whether he comes forward voluntarily. True, Gordon v. United States, 438 F.2d 858 (5th Cir. 1971) gives some limited support to this contention. However, the fact that the witness has come forward voluntarily should not in our view be the sole criterion for classifying him as an informer.

In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the alleged informer was an active participant in the illegal activity, and it was assumed in that case that this was an important criterion. The entire question in *Roviaro* was one of whether the government justifiably withheld the identity. The Court did not deal directly with the issue of definition. [2]

There are numerous judicial definitions of the term "informer," none of which is definitive or binding upon this court. See, for example, Gordon v. United States, 438 F.2d 858 (5th Cir. 1971); Black v. Sheraton Corp., 47 F. R.D. 263 (D.C.D.C.1969); Howard v. Allgood, 272 F.Supp. 381 (D.C.La.1967); United States v. Koon Wah Lee, 74 F. Supp. 449 (D.C.Hawaii 1947); State v. Oliver, 222 A.2d 761, 92 N.J.Super. 228, 222 A.2d 761 (1966). We express no opinion upon these definitions. We do conclude, however, that the witness Maret cannot be considered an "informer" as that term has been defined in any of the cases.

2. In *Roviaro*, the government did not dispute that the undercover employee who participated in the narcotics transaction was, in fact, an "informer." Generally, the cases involving the use of informers are concerned with the government's privilege to withhold the identity of a paid government agent. In these cases the government has not argued that an agent should *not* be classified as an informer, so that a definition of the term "informer" has neither been sought by the parties nor expressed by the court. See On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, rehearing denied, 344 U. S. 848, 73 S.Ct. 5, 97 L.Ed. 659 (1952); Hoffa v. United States, 385 U.S. 293, 87 S. Ct. 408, 17 L.Ed.2d 374 (1966).

■ The voluntary submission of information or report of a crime to a government agency does not, without more, make an individual an informer, in the absence of some connection between the individual and the government agency. To be an informer the individual supplying the information generally is either paid for his services or, having been a participant in the unlawful transaction, is granted immunity in exchange for his testimony.[3] In the case at bar, there is no showing that the witness Maret was in complicity with the authorities. He was not in their employ. He may have hoped for advantage, but no such agreement was demonstrated.

Although the appellant sought to establish that the witness Maret had set him up, so to speak, he was unable to accomplish this. The trial court ruled that the government in the case at bar was not obligated to disclose Maret's identity. Our view is that there is no obligation to identify Maret as an informer because it does not appear that in the usual understanding of that term he occupied such a position.

The trial court here recognized that the government was not required to reveal the names of all the witnesses in noncapital cases. *See* United States v. Hughes, 429 F.2d 1293 (10th Cir. 1970); United States v. Gleeson, 411 F.2d 1091 (10th Cir. 1969); *see also* 18 U.S.C. § 3432. The court further ruled that to identify the witnesses would imperil their lives inside the penitentiary.

Finally, we note that this is a case in which the witness was not absent from the trial. Rather, he was present. He testified and was cross-examined fully.

### IV. *Government's Failure to Separate its Witnesses*

■ Appellant would have us rule that allowing these inmate witnesses to be together was *per se* error. We disagree. While it does call for most careful scrutiny by the trial court, we do not see it as a basis for reversal in the absence of a showing of prejudice.

True, the witnesses had been ordered in to testify, had been admonished not to discuss the case and had disobeyed, apparently while they were celled together at the county jail in Kansas City, Kansas. The court noted that it had not ordered that the witnesses be physically separated and said that under the particular circumstances where the witnesses were inmates the government counsel "did probably all that counsel could do except take [the prisoners] home with them" and considered also the fact that the jury was aware that the government witnesses had discussed the case together and could take that into account in weighing their testimony.

■ The matter of separation of witnesses is left to the discretion of the trial court subject to review where there has been abuse of discretion or manifest injustice. McCrossen v. United States, 339 F.2d 810 (10th Cir. 1965); Johnston v. United States, 260 F.2d 345 (10th Cir.), cert. denied, 360 U.S. 935, 79 S.Ct. 1454, 4 L.Ed.2d 1547 (1958); Mitchell v. United States, 126 F.2d 550 (10th Cir.), cert. denied, 316 U.S. 702, 62 S.Ct. 1307, 86 L.Ed. 1771 (1941).

■ Where there has been a violation of the exclusionary rule it is not error to deny a motion for mistrial when no prejudice has resulted from the violation. United States v. Stidham, 459 F.2d 297 (10th Cir.), cert. denied, 409 U.S. 869, 93 S.Ct. 168, 34 L.Ed.2d 118 (1972); United States v. Sluder, 457 F.2d 703 (10th Cir. 1972).

■ Noncompliance can, of course, lead to citation for contempt. *See* Holder v. United States, 150 U.S. 91, 14 S.Ct.

---

3. *See* Devitt and Blackmar, 1 Federal Jury Practice and Instructions § 12.02:

*Testimony of Informer—Interested Witness*
The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant.

10, 37 L.Ed. 1010 (1893); United States v. Suarez, 487 F.2d 236 (5th Cir. 1973).

In view of the fact that there is no prejudice demonstrated, indeed there were many discrepancies in the testimony of the various inmate witnesses, we must conclude that the trial court did not err in denying the motion for mistrial.

## V. *Noncompliance With the Omnibus Hearing Report*

In the Omnibus Hearing Report, the government stipulated: 1) that it would allow the defendants to inspect and/or copy prior to trial any "books, papers, documents, photographs or tangible objects . . . which will be used at the trial," and 2) that "information concerning a prior felony conviction of persons whom the prosecution intends to call as witnesses at trial will be supplied to defendants, so far as known to the prosecution."

Appellant contends that the government failed to comply with these stipulations. He asserts that he was never advised prior to trial that the government intended to introduce into evidence several photographs of the burned-out cell. Nor was he provided with the criminal records of each of the government's inmate witnesses, despite counsel's repeated requests for such information.

At the trial, after the government had completed presentation of its case, defense counsel moved for the production of all evidence favorable to the accused. This motion was granted. In addition, counsel requested the government to produce the prior criminal records of its inmate witnesses. The prosecution argued that such written records were unavailable, and that all of the prior convictions of its witnesses had been brought out on direct examination, at least as far as those facts were known to the prosecution.

The district court rebuked the prosecution for its failure to produce the witnesses' official criminal records, stating:

[T]here isn't any excuse for the government not having this information available because it is something that would aid the jury in passing on the credibility of the witnesses and the Omnibus Order did require it, and the government isn't just the individual U. S. Attorney who stands in court at any time. The government is the government, and you should have had this.

Nevertheless, the district court denied appellant's motion on the grounds that a) the government "didn't present [the witnesses] as lily white individuals who were brought here from some seminary" and b) the government allegedly brought out the complete criminal record of each witness during direct examination. The court added: "If that's not the case, the Court of Appeals will probably take a very dim view of the government's failure to produce."

■ Under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecution's suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.

Moore v. Illinois, 408 U.S. 786, 92 S. Ct. 2562, 33 L.Ed.2d 706 (1972), a recent decision of the Supreme Court, held that the *Brady* rule is applicable only when the following factors exist: (a) suppression by the prosecution after a request by the defense; (b) the evidence's favorable character for the defense; and (c) the materiality of the evidence. 408 U.S. at 794–795. The *Moore* decision further held that, although the defendant had requested pretrial disclosure of *all* written statements, the prosecution did not violate defendant's due process rights by not producing evidence of one witness' misidentification of the defendant, where such evidence was not material to the issue of guilt. Nor are defendant's due process rights violated where the evidence which was not produced does not actually benefit the defendant's case. United States v. Brumley, 466 F.2d 911 (10th Cir.

1972), cert. denied, 412 U.S. 929, 93 S. Ct. 2755, 37 L.Ed.2d 156 (1973).

 Under some circumstances, the government's suppression of beneficial impeachment evidence affecting the credibility of a key prosecution witness may result also in such unfairness as to violate due process. United States v. Harris, 462 F.2d 1033 (10th Cir. 1972). If the prosecution's failure to produce was not deliberate, the test for reversal on appeal is whether the trial was not merely imperfect but rather "unacceptably unfair." United States v. Harris, *supra*. And where the evidence allegedly suppressed is not material to the question of the guilt or innocence of the accused but is admissible only for the purpose of attacking the credibility of a government witness, the prosecution's failure to produce must be inherently significant and favorable to the defense in order to be "unacceptably unfair." *Cf.* Link v. United States, 352 F.2d 207 (8th Cir.), cert. denied, 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1965). The salient inquiry is whether production of the requested information might have led the jury to entertain a reasonable doubt about the defendant's guilt. *See* Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Levin v. Clark, 408 F.2d 1209 (D.C.Cir.1967). The nondisclosure must itself be prejudicial to the defense. United States v. Brumley, *supra*.

 At bar, there is no question as to the prosecution's nondisclosure of the witnesses' prior criminal records constituting noncompliance with the Omnibus Hearing Report. In light, however, of the Supreme Court's pronouncement in Moore v. Illinois, it is our conclusion that reversal pursuant to *Brady* is not called for. The information which the government failed to produce was *not material* to innocence or guilt. Moreover, the prosecution did bring out the prior convictions of its witnesses during direct examination, and appellant has not shown that this testimony was inaccurate.

Regarding the government's failure to make pretrial production of photographs, the record reveals that defense counsel made a timely objection to their introduction on the basis of the government's nondisclosure. The trial court overruled the objection.

The photographs in question were taken by one Clarence R. Bice, a correctional counselor at Leavenworth, several hours after the fire on August 16, 1972. The photographs depict the charred mattress, bunk bed and blackened wall of the victim's cell. Appellant alleges that the introduction of these photographs violated his rights to due process.

We were confronted with a similar contention in United States v. Dowdy, 455 F.2d 1253 (10th Cir. 1972), which was an appeal from a conviction for knowingly transporting a forged check in interstate commerce. The appellant there objected to the prosecution's introduction into evidence of bank deposit slips, deposit slip tallies and a photocopy of the original check, none of which had been disclosed to the defendant in advance of trial. This constituted noncompliance with the pretrial discovery order and Omnibus Hearing Report. We held in *Dowdy* that the prosecution's failure to comply with the order was "inexcusable." Nevertheless, it was concluded that the decision to reject or accept the documents was properly within the trial court's discretion. His determination that the admission was not prejudicial was not an abuse of his discretion in view of the fact that 1) the other evidence adduced at trial had already established the elements of the offense; 2) the exhibits introduced were not of a sensitive nature; and 3) such evidence did not involve a new and sensational mode of proof. 455 F.2d at 1255.

 The controlling factors in *Dowdy* are applicable to the case at bar. The photographs introduced by the prosecution were of cumulative evidentiary import and did not constitute a new manner of proof. Under these circumstances, the trial court did not abuse its

discretion in overruling the objection to their admission. Nor was this violative of appellant's constitutional right to due process.

The judgment is affirmed.