THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
CHARLES DOLCE, DEFENDANT-RESPONDENT.

Argued November 18 and 19, 1963—Decided January 20, 1964.

*Mr. Anthony D. Andora,* Assistant Prosecutor of Bergen County, argued the cause for plaintiff-appellant (*Mr. Guy W. Calissi,* Prosecutor of Bergen County, attorney).

*Mr. Michael A. Querques* argued the cause for defendant-respondent.

The opinion of the court was delivered by

FRANCIS, J. Defendant was convicted of receiving stolen goods in violation of *N. J. S.* 2A:139–1. More particularly, the indictment charged that on June 30, 1960 he did receive,

buy and have 51 State of New Jersey Motor Vehicle Ownership Certificates knowing that they had been stolen. The Appellate Division reversed on the ground that the trial court erred in refusing to order the State to produce a police collaborator at the trial or to disclose his name and whereabouts. This was sought in connection with. defendant's alleged defense of entrapment. *State v. Dolce*, 78 *N. J. Super.* 247 (*App. Div.* 1963). We granted the State's application for certification. 40 *N. J.* 217 (1963).

The record discloses that during the night of June 4–5, 1958 the Buess Motor Vehicle Agency in Union City, New Jersey was entered and 2,100 blank official motor vehicle ownership certificates were stolen. Fifty-one of the certificates, identified by number, were in possession of Dolce at the time of his arrest on June 30, 1960.

Testimony was adduced at the trial that Motor Vehicle Department inspectors considered Dolce a "prime suspect." The part which he was suspected of taking in the criminal transaction or the basis for the suspicion was not revealed at the trial. The record shows, however, that the inspectors decided to lay a trap for him. On June 28, 1960 Henry Gancarz, an inspector who had been working on the case, introduced one Rosenberg, presumably a police collaborator, to another collaborator identified in the testimony only as "Stu." Rosenberg knew Dolce and the introduction was arranged so that he could have Stu and Dolce meet. Rosenberg accomplished his mission with dispatch, because by about 4 p. m. on June 30, Stu's activity resulted in Dolce's arrest with the 51 stolen certificates in his possession.

The police strategy was to have Stu find out through conversation with Dolce if he had any of the stolen certificates, and lead him to believe that Stu had access to a stolen Motor Vehicle Department machine used ordinarily to stamp blank ownership certificates, thus validating them. Apparently, Dolce accepted the artifice because on the afternoon of June 30, Inspector Gancarz and Stu met in East Paterson and as the result of their conversation Gancarz and other officers

placed a garage on Franklin Avenue in Garfield, New Jersey under surveillance. By prearrangement, another inspector, Joseph Guarino, in khaki trousers and sport shirt, had been stationed in the garage with the validating machine in his possession. Sometime after 3 P. M. Dolce and Stu drove past the garage a short distance, stopped, got out of the car and walked toward the garage. Guarino went to the door and met them. Stu introduced him to Dolce and advised that Dolce had brought only 50 forms instead of 1,200. After some conversation about that situation, Guarino and Dolce got back in the car where Dolce produced 51 ownership certificates from underneath his shirt. Guarino examined them and inquired where they came from. Dolce said they came from a motor vehicle agency but declined to name the one because that "was unethical." He and Guarino then made a deal under which Guarino would receive 28 certificates for himself in return for the validation of 23 certificates for Dolce and payment to him of $50. The men went into the garage where Guarino produced the validating machine from a hiding place and began to stamp the certificates. (Stu did not accompany them into the garage; he disappeared.) While the operation was in process, with Dolce holding the certificates, three other inspectors and a police sergeant suddenly appeared and arrested Dolce and Guarino.

At police headquarters before Guarino identified himself, he asked Dolce if he had "tipped off" the police. Dolce denied that he had done so, saying that it must have been Stu and that if "he found out for sure he would kill him." He told Guarino also not to give the police any information, to "be quiet," that he had a "good mouthpiece" who would get them off. Later, after Guarino had disclosed his true occupation and was endeavoring to persuade Dolce to cooperate with the police, Dolce refused to name his accomplices because if he did so he would "get killed."

The above factual outline represents the basic case of the State. The defendant neither testified nor offered any testimony by way of defense. We were informed at oral argument

by defense counsel that Dolce had a previous criminal record and decided not to take the witness stand. The trial court's sentence note appearing in the judgment confirms counsel's statement, although the nature of the previous crime or crimes does not appear.

Defendant's opening to the jury was guarded and ambiguous with respect to the factual nature of his defense. It was alleged, however, that Dolce did not know the ownership certificates on which the indictment was based had been stolen. Then, alternatively and perhaps inconsistently, his counsel said the defense of entrapment would be interposed.

The record discloses that prior to trial defendant sought to obtain by a demand for particulars the identity and address of the person who brought him to the garage on the date of arrest, June 30, 1960. The prosecutor refused to name and locate the person, relying on the common law policy reflected in *N. J. S.* 2A :84A–28, which provides:

"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues."

Defendant sought an order compelling the disclosure. But at argument of the motion no proof whatever, in affidavit form or otherwise, was offered to support the defense of entrapment or to indicate in any legally probative way that such defense was legitimately in the case. Nor did defendant offer to testify in support thereof before the court on any terms which might protect his statements from being used against him at the trial of the indictment. *Cf. State v. DeCola,* 33 *N. J.* 335, 352 (1960). His counsel made hearsay and conclusory statements with respect to what the defendant allegedly told him about entrapment but such informal courtroom

argument cannot be used as a substitute for proof nor to provide a basis for a finding by the judge that disclosure is essential to a fair determination of the issues. The motion was denied, and since its purpose was limited then and on the present appeal to the defense of entrapment, we conclude the trial court's discretion was not abused. There is no more justification for giving such statements of counsel, either on the motion or in the opening to the jury at the trial, any substantive probative value on the defense of entrapment than there is for recognizing a plea of possible self-incrimination on the mere naked say-so of a witness or a party in any judicial proceeding. *State v. DeCola, supra* (33 *N. J.,* at *pp.* 350–353).

Cross-examination of the State's witnesses made it plain that the Motor Vehicle Department inspectors sought by artifice to have Dolce produce stolen ownership certificates. The bait held out to him was the opportunity to validate the blank certificates by means of a stolen machine which would impress them with the stamp officially employed to show regularity and authenticity. Dolce quickly responded to the deception. The entire operation took less than two days. The evidence supports the view that defendant's own cupidity and predisposition to crime sprung the trap for him.

It is not necessary to detail in minute fashion the facts adduced by defendant's cross-examination. Suffice it to say they show a plan to trap a defendant who had committed a crime; not a plan to lure an innocent person into committing a crime which otherwise he would not have committed but for the creative enticement of the public officers. In short, the cross-examination of the State's witnesses did not evoke any fact which fairly suggested that there was a basis for a claim of entrapment. In this connection it must be realized that the crime charged against Dolce does not stem from use or attempted use of a stolen Motor Vehicle Department machine to validate stolen ownership certificates; nor was he charged with an attempt or conspiracy to do so. He was charged with an independent crime, one which he had already

allegedly committed, *i. e.,* receiving and having in his possession the 51 certificates knowing they had been stolen. Incidentally, although defense counsel had said in his opening to the jury that Dolce denied knowledge that they were stolen, no witness or evidence for the defense supported the denial. In our judgment the evidence on that aspect of the case was adequate to warrant the jury in finding beyond a reasonable doubt defendant's guilt of the crime for which he was indicted and tried.

During cross-examination of the State's witnesses, when the plan to trap Dolce emerged, his attorney questioned them as to Stu's full name and address so he could be produced as a witness. The thesis of the defense was that the cross-examination had provided proof of entrapment and therefore the information as to the informer's identity was essential to a fair determination of that defense. The objections of the State were sustained by the trial judge who held that defendant had neither evoked nor produced any proof of entrapment, as the law defines the term, which so moved his discretion as to warrant an order on the State to furnish Stu's proper name and address. The ruling was repeated when the demand for the information was renewed at the close of the State's case. We find no reversible error in any of these actions of the trial court.

## I.

 Entrapment exists when the criminal design originates with the police officials, and they implant in the mind of an innocent person the disposition to commit the offense and they induce its commission in order that they may prosecute. *Sorrells v. United States,* 287 *U. S.* 435, 442, 53 *S. Ct.* 210, 77 *L. Ed.* 413, 417 (1932). It occurs only when the criminal conduct was the product of the creative activity of law enforcement officials. *Sherman v. United States,* 356 *U. S.* 369, 372, 78 *S. Ct.* 819, 2 *L. Ed. 2d* 848, 851 (1958). In such situation although the violation of the criminal law

is not denied, 22 *C. J. S. Criminal Law* § 45(1), *p.* 137 (1961), conviction of the defendant cannot be had because the methods employed by the enforcement officials are unconscionable and contrary to public policy. *Sorrells v. United States, supra,* 287 *U. S.,* at *p.* 444, 53 *S. Ct.,* at *p.* 213. The courts will not permit their process to be used in aid of a scheme for the actual creation of a crime by those whose duty it is to deter its commission. Chief Justice Warren, speaking for the court in *Sherman,* likened police methods which constitute entrapment to those which produce coerced confessions and unlawful searches. 356 *U. S.,* at *p.* 372, 78 *S. Ct.,* at *p.* 820. Therefore, without attributing any merit to a guilty defendant but solely to safeguard the "purity of [their] own temple," the courts will not allow their process to be used to consummate a wrong. *Sorrells v. United States, supra,* 287 *U. S.,* at *pp.* 455–458, 53 *S. Ct.,* at *pp.* 217–218 (concurring opinion). The defense is spoken of as establishing an estoppel against the government or as a bar to prosecution or as removing the case from the purview of the statute. *Id.,* 287 *U. S.,* at *pp.* 448, 449, 53 *S. Ct.,* at *p.* 215.

Judicial abhorrence of entrapment does not mean that police officials cannot afford opportunities or facilities for the commission of criminal offenses. Artifice and stratagem, traps, decoys and deceptions may be used to obtain evidence of the commission of crime or to catch those engaged in criminal enterprises. Such devices are necessary weapons in the ever present war on crime and criminals. *Sherman v. United States, supra; Sorrells v. United States, supra.* According to *Sherman v. United States,* in determining whether entrapment existed, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. 356 *U. S.,* at *pp.* 372–373, 78 *S. Ct.,* at *pp.* 820–821. Or, as the annotation to the *Tentative Draft of the Model Penal Code* puts it, "Is the defendant a strayed lamb or an ensnared wolf?" (*Tentative Draft No.* 9, 1959, *p.* 21.) The law will protect the innocent from being led to crime through the activities of law enforcement officers but it will not pro-

tect the guilty from the consequences of subjectively mistaking apparent for actual opportunity to commit crime safely. *Marshall v. United States,* 258 *F. 2d* 94, 97 (10 *Cir.* 1958), reversed on other grounds 360 *U. S.* 310, 79 *S. Ct.* 1171, 3 *L. Ed. 2d* 1250 (1959). Entrapment is concerned only with the manufacturing of crime by law enforcement officials or their agents. The basic search is for the origin of the intent to commit the crime. Did it originate with the officers and was the offense the product of their creative activity? *Sherman v. United States, supra,* 356 *U. S.,* at *pp.* 383–384, 78 *S. Ct.,* at *pp.* 826–827 (concurring opinion); *Sorrells v. United States, supra,* 287 *U. S.,* at *p.* 451, 53 *S. Ct.,* at *p.* 216; *People v. Clark,* 7 *Ill. 2d* 163, 130 *N. E. 2d* 195 (*Sup. Ct.* 1955). The doctrine reflects a policy that the powers of government should not be used to entice otherwise innocent persons into the commission of crimes which they would not commit on their own. Such persons are situational, not chronic offenders.

## II.

Entrapment is an affirmative defense. In the present state of the law this means that although the defendant has the burden of adducing evidence in its support, if such evidence appears in the State's case or that of the defendant, the issue must be left to the jury for determination. And the jury should be told the defendant is entitled to acquittal unless the State has satisfied them beyond a reasonable doubt that he committed the crime charged and that he was not entrapped into doing so by the police officials. See *Slate v. Abbott,* 36 *N. J.* 63, 72 (1961); *Ryles v. United States,* 183 *F. 2d* 944, 945 (10 *Cir.* 1950). It may be noted in passing that the *Proposed Official Draft of the Model Penal Code* issued May 4, 1962, provides that the defendant "shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment." § 2.13(2).

 There are few cases in New Jersey dealing with entrapment. Those to be found in the reports indicate that assertion of the defense requires no departure at trial from the conventional procedure ordinarily followed in criminal cases, *i. e.,* full trial by court and jury unless the jury is waived. And when the trial is by jury, if a factual issue is presented as to the defense of entrapment, it is resolved by the jury like any other defense. See *State v. Rosenberg,* 37 *N. J. Super.* 197 (*App. Div.* 1955); and, see *Sorrells v. United States, supra; Sherman v. United States, supra; Masciale v. United States,* 356 *U. S.* 386, 78 *S. Ct.* 827, 2 *L. Ed.* 2d 859 (1958); "Entrapment," 73 *Harv. L. Rev.* 1333, 1343–1344 (1960); Note, 28 *Colum. L. Rev.* 1067, 1075 (1928).

 When a defendant interposes the defense of entrapment, the State may introduce evidence of his predisposition to commit crime. The purpose is to demonstrate that he was not an innocent person who would not have committed the offense were it not for the proposal and inducement of the police officers. Predisposition is evidenced by previous conviction of crime, reputation for criminal activities, ready compliance with minimal inducement, or easy yielding to the opportunity to commit the offense. As was said in *Sorrells:*

"* * * [I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." 287 *U. S.,* at *pp.* 451–452, 53 *S. Ct.,* at *p.* 216.

See, also, *Sherman v. United States, supra,* 356 *U. S.,* at *p.* 375, 78 *S. Ct.,* at *p.* 822; *Trice v. United States,* 211 *F.* 2d 513, 519 (9 *Cir.* 1954); *Model Penal Code Draft, supra, p.* 21; 73 *Harv. L. Rev., supra, p.* 1339; Donnelly, "Judicial Control of Informants," 60 *Yale L. J.* 1091, 1113 (1951).

 The cases seem to regard evidence of previous conviction of crime or reputation for engaging in criminal activities as admissible in rebuttal where defendant raises the defense

of entrapment. *Sorrells v. United States, supra,* 287 *U. S.,* at *p.* 458, 53 *S. Ct.,* at *p.* 218 (concurring opinion) ; *United States v. Johnson,* 208 *F. 2d* 404 (2 *Cir.* 1953), *cert.* denied 347 *U. S.* 928, 74 *S. Ct.* 531, 98 *L. Ed.* 1080 (1954) ; *United States v. Sherman,* 200 *F. 2d* 880 (2 *Cir.* 1953) ; *Carlton v. United States,* 198 *F. 2d* 795 (9 *Cir.* 1952) ; 60 *Yale L. J., supra,* 1102 (1951). Of course, in New Jersey previous conviction of crime is admissible on cross-examination of a defendant to affect his credibility. But, where a defendant's direct testimony or other evidence adduced by him creates a factual issue on a defense of entrapment, such cross-examination would serve the additional purpose of showing defendant's propensity to commit crime. Whether evidence of propensity for crime is admissible on the State's case in chief before defendant, by cross-examination or otherwise, has succeeded in getting some proof into the record in support of his asserted claim of entrapment (in his opening, for example), is questionable. On a retrial of *United States v. Sherman,* following reversal of the conviction (200 *F. 2d* 880 (2 *Cir.* 1955)), the trial court allowed the government in its direct case to prove previous convictions on narcotic charges. The action was sustained because it was clear from the history of the case and the proceedings up to that point in the trial that the defense of entrapment would be invoked. The Circuit Court of Appeals did not rule on the admissibility of such predisposition evidence when there is simply a possibility that the defense will be raised. *United States v. Sherman,* 240 *F. 2d* 949 (2 *Cir.* 1957), reversed on other grounds, *sub nom. Sherman v. United States, supra.*

The foregoing discussion of the substantive nature of entrapment serves to emphasize our earlier statement that the record made at the trial provided no support for defendant's motion for judgment of acquittal based on that defense. Nor did the cross-examination of the State's witnesses bring forward enough affirmative evidence of entrapment to require submission of the question as a factual issue for determination by the jury. More particularly, the evidence that ap-

peared in the State's case of the nature of the enforcement official's activity toward the defendant was not adequate to produce such an issue. Nor could it be said, especially in the absence of any testimony from the defendant, that considered subjectively the officer's activity would justify a jury in concluding the defendant had been lured or enticed into committing a crime which otherwise he would not have committed. For examples of entrapment, see *Sherman v. United States, supra; Sorrells v. United States, supra; Cermak v. United States,* 4 *F.* 2d 99 (6 *Cir.* 1925); *Stein v. United States,* 166 *F.* 2d 851 (9 *Cir.* 1948), *cert.* denied 334 *U. S.* 844, 68 *S. Ct.* 1512, 92 *L. Ed.* 1768 (1948); *People v. Schubin,* 166 *Cal. App.* 2d 267, 332 *P.* 2d 737 (*D. Ct. App.* 1958). In this connection the importance of a defendant's own testimony cannot be overlooked. *People v. Outten,* 13 *Ill.* 2d 21, 147 *N. E.* 2d 284 (*Sup. Ct.* 1958).

▪▪▪▪ What has been said necessarily disposes of defendant's contention that his request for the identity and address of the informer, Stu, should have been furnished. The legislative policy as declared by *N. J. S.* 2A:84A–28 is opposed to such revelation unless the trial judge finds it "is essential to a fair determination" of the issue of entrapment. A frivolous demand for the information, or one based only on an unsworn assertion that defendant was seduced into perpetrating the crime by the creative activity of police officers need not be recognized. Ample reason exists to justify the lawmakers' decision to protect the informer. Examples of the hazard of his position are easily found. See *Schuster v. City of New York,* 5 *N. Y.* 2d 75, 180 *N. Y. S.* 2d 265, 154 *N. E.* 2d 534 (*Ct. App.* 1958); *Brown v. United States,* 222 *F.* 2d 293 (9 *Cir.* 1955); *People v. Durazo,* 52 *Cal.* 2d 354, 340 *P.* 2d 594, 76 *A. L. R.* 2d 257 (1959) (dissenting opinion); *Harrington v. State,* 110 *So.* 2d 495 (*Fla. D. Ct. App.* 1959). The public interest to be served by preserving the free flow of information of criminal activities, and by employing investigative agents who have, or acquire by deception or otherwise, access to persons engaged in such activities, should not be

thwarted unless a showing is made that a defense such as entrapment is presented in good faith, with some reasonable factual support, and that the informer is a material witness necessary to the fair determination of the defense. If the rule were otherwise, a defendant by the mere naked allegation that he intended to rely on the defense could force the State to reveal the name and whereabouts of the informer and, on its refusal to do so, gain dismissal of the prosecution.

There is no doubt that Dolce had possession of the stolen ownership certificates when arrested. There is nothing to show the purport of Stu's conversations with him, or that they did more than to lead him to believe a deal could be made whereby, for a consideration, the certificates would be validated by means of a stolen official stamping machine. In the absence of testimony by defendant or evidence from any other source giving rise to a fair inference that his was an innocent mind free of any intention to acquire stolen certificates until it was transmuted into a criminal mind by the creative enticement of Stu or of the officers, there was no sufficient showing of entrapment to require a finding that disclosure of Stu's identity and whereabouts was essential to the fair determination of that defense. *Cf. Lopez v. United States,* 373 *U. S.* 427, 83 *S. Ct.* 1381, 10 *L. Ed.* 2d 462 (1963); *People v. Lepur,* 175 *Cal. App.* 2d 798, 346 *P.* 2d 914 (*D. Ct. App.* 1959); *People v. Pettyjohn,* 172 *Cal. App.* 2d 188, 342 *P.* 2d 416 (*D. Ct. App.* 1959); *People v. Rodriguez,* 168 *Cal. App.* 2d 452, 336 *P.* 2d 266 (*D. Ct. App.* 1959), *cert.* denied 361 *U. S.* 843, 80 *S. Ct.* 96, 4 *L. Ed.* 2d 82 (1959); *People v. Wasco,* 153 *Cal. App.* 2d 485, 314 *P.* 2d 558 (*D. Ct. App.* 1957); *People v. Dewson,* 150 *Cal. App.* 2d 119, 310 *P.* 2d 162 (*D. Ct. App.* 1957); *People v. Outten, supra; State v. Hochman,* 2 *Wis.* 2d 410, 86 *N. W.* 2d 446, 77 *A. L. R.* 2d 784 (*Sup. Ct.* 1957). Accordingly, it cannot be said the trial court abused his discretion in refusing to require the State to yield to the demand of defendant therefor.

## III.

There has been much discussion of the proper procedure to be employed in dealing with the defense of entrapment. In the *Sorrells* case, Justice Roberts, in a concurring opinion, argued strongly that the issue should be determined by the court and not by the jury. He said:

"The doctrine rests, rather, on a fundamental rule of public policy. The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law. The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention." 287 *U. S.*, at *p.* 457, 53 *S. Ct.*, at *p.* 218.

He pointed out that a prisoner had been discharged before trial on *habeas corpus* where the evidence clearly showed entrapment (*United States ex rel. Hassel v. Mathues, 22 F. 2d* 979 (*E. D. Pa.* 1927)); that the defense could be raised on preliminary motion to suppress the evidence, or by a plea in bar. (*C. M. Spring Drug Co. v. United States,* 12 *F. 2d* 852 (8 *Cir.* 1926); *United States v. Pappagoda,* 288 *Fed.* 214 (*D. Conn.* 1923); Note, 28 *Colum. L. Rev., supra,* at *pp.* 1071, 1075; but see, *contra, State v. Hochman, supra.*) But the majority of the court, without discussion, summarily declared the question was for jury resolution. More recently, the dissenting Justices (Frankfurter, Douglas, Harlan and Brennan) espoused Justice Roberts' view, but the majority declined to reconsider the matter as the procedural question had not been raised or argued by the parties. *Sherman v. United States, supra,* 356 *U. S.*, at *pp.* 376, 384, 78 *S. Ct.*, at *pp.* 822, 826, 2 *L. Ed. 2d,* at *p.* 853, dissenting opinion at *p.* 858; *Masciale v. United States, supra,* 356 *U. S.*, at *p.* 389, 78 *S. Ct.*, at *p.* 829, 2 *L. Ed. 2d,* at *p.* 861. The note, 73 *Harv. L. Rev., supra,* at *p.* 1344, after discussion of the cases, suggests the "defense should ideally be left to the jury."

The *Tentative Draft No. 9 of the Model Penal Code, supra,* favored trial by jury. § 2.10, *pp.* 14, 22. Among other things, the annotation suggested that leaving the issue to the jury "also avoids any constitutional question which might otherwise be raised." *p.* 22. Although we doubt the substantiality of the constitutional problem, there is no need to express any definitive view on the subject at this time. The *Proposed Official Draft of the Model Penal Code, supra,* took the course of Justice Roberts and the dissenters in *Sherman* and *Masciale* and proposed in subsection (2) of section 2.13 that:

"* * * The issue of entrapment shall be tried by the Court in the absence of the jury."

The procedural problem of trial by jury or by the court alone is not in contention in the present case. It was not raised as a ground of appeal by defendant originally, nor as a basis for supporting the Appellate Division action and consequently is not decided. The importance of the problem to the future trial of criminal cases involving the defense of entrapment suggests consideration of a practice rule governing the matter by the Court's Committee on Criminal Procedure and discussion thereof at the 1964 Judicial Conference.

## IV.

In his last ground of appeal, defendant argued the trial court erred further in refusing to order the Prosecutor to answer his demand for particulars as to Stu's name and address, because "on the day of the arrest Stu and the defendant met beyond Bergen County and Stu took the defendant to Bergen County," and therefore the venue was probably improperly laid in Bergen County. (The demand for particulars and the order of denial are not in the appendix.) But there was no proof in affidavit form or otherwise at any time of the fact asserted. Moreover, no one suggested Dolce received the stolen certificates from Stu, even if they

did meet outside of Bergen County. Obviously, therefore, their meeting place on the day of the arrest would not, of itself, be significant as to the place of receiving. The proof at the trial was sufficient to support the venue as laid in the indictment within the intendment of *State v. Palmer*, 151 *A.* 365 (*N. J. Sup. Ct.* 1930), not in official reports; *State v. DiPaolo*, 34 *N. J.* 279, 289 (1961); *State v. O'Shea*, 16 *N. J.* 1 (1954). We find no reversible error in this regard.

## V.

For the reasons expressed above, the judgment of the Appellate Division is reversed and the judgment of conviction is affirmed.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.