THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH BOUSE, Defendant-Appellant.

First District (5th Division) No. 62900

Opinion filed February 25, 1977.

Karr & Leonard, of Chicago (Terrence E. Leonard, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Neil H. Cohen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a bench trial, defendant was convicted of one count of attempt bribery (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4, 33—1), and one count of official misconduct (Ill. Rev. Stat. 1973, ch. 38, par. 33—3) and sentenced to four years probation. He was acquitted on conspiracy to commit bribery. (Ill. Rev. Stat. 1973, ch. 38, par. 8—2.) Prior to the trial, a preliminary hearing was conducted to determine whether there was probable cause that the defendant had committed the offenses of bribery and official misconduct. After hearing evidence, the court entered a finding of no probable cause and discharged defendant as to both charges. Immediately after the preliminary hearing discharge, defendant was indicted with codefendant, Vincent Gaiz for conspiracy to commit bribery, attempt bribery and official misconduct. Ill. Rev. Stat. 1973, ch. 38, pars. 8—2, 8—4, 33—1 and 33—3.

On appeal he contends that: (1) the evidence was insufficient to establish guilt beyond a reasonable doubt, (2) he was denied the effective assistance of counsel, (3) the finding of no probable cause in the preliminary hearing should have negated the trial court's later finding of guilty on two counts of the indictment. At trial, defendant's attorney entered into a stipulation with the Assistant State's Attorney that the only evidence which would be submitted before the court would be the reports of the proceedings taken at the grand jury hearing and at the defendant's preliminary hearing.

We affirm. The pertinent evidence follows:

Reynaldo Rueda testified for the State. On the morning of May 13, 1974, at approximately 11:30 a.m., he was a tow truck driver for the MLA Towing Company, and was driving northbound on Western Avenue when he was stopped by Officer Vincent Gaiz of the Chicago Police Department. The truck he was driving did not have a proper city vehicle sticker. Officer Gaiz asked him for his driver's license and he told him that he did not have his driver's license with him. Officer Gaiz told him it

would cost him $50 for driving without a license. He replied that he had no money of his own on him. Officer Gaiz told him to call his employer, Robert Perry. He then called his employer and the secretary answered the phone. He told her he had been stopped by the police. Officer Gaiz took the telephone receiver from him and talked to the secretary. Rueda didn't hear the conversation. After Officer Gaiz hung up the phone, he asked Rueda for his employer's name, address and telephone number. Rueda wrote the information down for the officer. Officer Gaiz told him that he would get in touch with his boss later on that afternoon and that he was going to let him go at that time. Rueda left and went on his business.

Rueda also testified that at about 2:30 in the afternoon he stopped at his office and his boss was present. He had a conversation with his boss and then remained around the office. He was there when the defendant came into the office at about 4:30 in the afternoon. He got up and left the room when defendant arrived. He received no citations for traffic violations from Officer Gaiz or any other officer.

Robert K. Perry testified for the State. He owned the MLA Towing Company. On May 13, 1974, at approximately 12 o'clock he received a call from his secretary. His secretary stated on the phone that a Chicago Police officer was calling from 22nd and Western Avenue relative to a company tow truck being stopped for two traffic violations. About 3:30 that same afternoon he received a telephone call from an individual who identified himself as "Frank" and who stated that he was the officer from 22nd and Western and would like to come up to the office and talk about the situation. During that conversation, "Frank" asked him if he "had enough for two," and stated that he would be around the office about 4:30 that afternoon.

Shortly thereafter, Perry placed a call to the Internal Affairs Division of the Chicago Police Department. Sergeants Major, Holmes and Hart of the Internal Affairs Division arrived at his office about 3:50 in the afternoon. He advised them of the incident. Two $10 bills were given to him by the Internal Affairs Division officers. The officers recorded the serial numbers of the bills and dusted them with infra-red powder that would show up fingerprints if the bills were touched. Perry placed these two $10 bills in his wallet on top of three single dollar bills. The three single dollar bills had been inventoried by the officers as part of his property. About 4:30 in the afternoon an individual dressed in blue shirt and dark blue jacket, who represented himself as "Frank Bliss," appeared at his office. This person was later identified to him by the Chicago Police Department as the defendant, Officer Joseph W. Bouse. Perry recognized the voice of the defendant as the voice of the caller he had talked to on the telephone earlier. Defendant reminded Perry that his driver could have gone to jail for driving a vehicle without a license. He replied that perhaps his driver

should have been sent to jail if he was wrong; at this point, defendant asked him, "What do you think it's worth?" He responded that he didn't understand what was meant by that statement. Defendant then said, "Well, 2 bits." Perry asked the defendant what was meant by the term "2 bits" and defendant replied, "twenty-five dollars." Perry stood up and opened his wallet and indicated that he didn't have $25. He asked his secretary if she had any additional money. His secretary replied that all she had were $10 bills. He walked over to her desk and defendant walked with him and said "Well, I've got change, I'll make change for you." She gave Perry a $5 bill and he handed the defendant the two $10 bills from his wallet and one $5 bill. They were the same two $10 bills given to Perry by the Internal Affairs Division officers.

Perry further testified that the defendant asked him if he had a business card and remarked that it was nice doing business with him. Defendant then left the office and was stopped by the Internal Affairs Division officers and placed under arrest. He was asked if he had any money in his possession. He brought out currency, two bills of which corresponded to the officers' prerecorded list of the money they had given to Perry. The officers recopied the serial numbers and advised defendant of his constitutional rights.

On cross-examination at the preliminary hearing, Perry testified that when the defendant arrived at the office he overheard the conversation between defendant and his secretary and the defendant stated that he was "there to see Mr. Perry." Perry acknowledged that the defendant appeared friendly and didn't threaten him in any way.

Myra P. Nikopoulous, secretary to Robert Perry, testified for the State. On the morning of May 13, 1974, she received a phone call from Reynaldo Rueda who told her that he was stopped by the police because he had no city sticker on the truck, that he didn't have his driver's license on him and that one of the police officers wanted to talk to her. Another person got on the phone and told her that he was one of the policemen who stopped the tow truck driver and he wanted to know what kind of boss she had. She told him that the boss was nice and asked if they were going to take Rueda to jail. He asked whether it would be appreciated if he let Rueda go. She replied in the affirmative. Later that day, she received another phone call. The person identified himself as the officer who had previously stopped the company tow truck. Subsequent to that, she received another phone call and the person talked to Perry, her employer. At approximately 4:30 that afternoon she was in the office with Perry when an individual entered who identified himself as "Frank." This person went over to her employer's desk and told her boss that he was the police officer who had talked to him on the phone and he asked for $25. She heard her employer reply that all he had was ten and he came over to

her desk and asked for change, but she only had tens in her petty cash drawer. She told her employer she would get change, but the police officer said he would change the ten and he proceeded to make change. After the police officer received the money, he asked her boss for some business cards so that "he could throw some business his way," and he started to leave. Immediately thereafter, she saw one of the police officers walk in from the outside, and two men from the back room came out.

Sergeant Everett J. Major testified for the State. He is assigned to the Internal Affairs Division of the Chicago Police Department. At about 3:10 in the afternoon of May 13, 1974, he received an assignment in which the allegation was that Robert Perry had telephoned and stated that a police officer was to arrive at his place of business to receive money for letting one of his drivers go. When he arrived at Perry's office he handed Perry $20 in currency. Before giving him the money, he prerecorded the serial numbers of the bills and had him acknowledge receipt of the money. Then he advised him to check his billfold and permitted him to retain three $1 bills that were in his wallet. Further, he instructed him to let any mention of money come from the police officer. A person arrived at the office and as that person was leaving the office, he apprehended him. The person apprehended was the defendant.

Sergeant Major further testified that he announced his office, informed the defendant that he was under arrest, and read him his constitutional rights. Then he asked for the money. Defendant reached into his lefthand pocket and brought out three $10 bills. Two of the $10 bills corresponded with the list of prerecorded money that had been given to Perry. During this time, defendant made no statement. The following day he conducted a showup, and tow truck driver Rueda identified Officer Vincent Gaiz as the officer who stopped him for the traffic violation. He investigated the Police Department records which revealed that on May 13, 1974, Officer Gaiz's partner in the squad car was the defendant.

Defendant did not testify at the preliminary hearing or at trial.

OPINION

Defendant first contends that the prosecution failed to prove beyond a reasonable doubt a material allegation of the indictment which charged him with commission of attempt bribery and official misconduct. Specifically, defendant contends that the evidence failed to establish that he accepted $25 tendered to him by Robert Perry within his official capacity as an officer of the Chicago Police Department and in exchange for his failure to do, promise to do, or promise to refrain from doing, any act within that capacity. He argues that since he was out of uniform at the time of the incident, it was not established that he was present and

accepted the $25 in his official capacity as a member of the Chicago Police Department. We disagree. Section 2—13 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 2—13) provides that a police officer is vested by law with a duty to maintain the public order and to make arrests by virtue of his office as a peace officer.

In *People v. Perry* (1st Dist. 1975), 27 Ill. App. 3d 230, 234, 327 N.E.2d 167, the court, in pointing out the differences between the functions of a police officer and a Chicago Housing Authority security guard, stated that emphasis on the general duty of a peace officer to maintain public order at all times is an important consideration in determining peace officer status. *Arrington v. City of Chicago* (1970), 45 Ill. 2d 316, 259 N.E.2d 22.

■■■ It is clear from the above-cited authorities that a police officer is, at all times and in all places, vested with the duty to maintain public order and the duty to effectuate arrests by virtue of his office and that duty is not affected by whether the officer is in or out of uniform. The defendant, although wearing plain clothes, had the status of a peace officer and was present in the offices of MLA Towing Company in his official capacity. He accepted the money from Perry, therefore, in violation of his official duties.

Furthermore, defendant in conversation with Perry told him on two separate occasions, first on the telephone and then in person at his office, that he was the police officer who had stopped his driver earlier that day. He also specifically related how he could have used the power of his office by issuing traffic citations to Perry and his driver and by sending his driver to jail. In addition, after he asked Perry for $25, he provided Perry's secretary with change for a $10 bill in order that the specific sum of $25 could be made up and given to him. The trial court could only conclude from this testimony that defendant was present in his official capacity as a police officer and accepted the money in consideration for his failure to perform a function of his office. Adding weight to this conclusion, is the admission of defendant's counsel in the record that at the time defendant was in the offices of MLA Towing Company, knowing that Perry's tow truck lacked a valid sticker, he could have issued Perry a traffic citation pursuant to his power to enforce the street traffic regulations of the City of Chicago (Municipal Code of Chicago 1939, ch. 27, pars. 27—355, 27—384). No citation was issued by the defendant.

■■■ Defendant, in argument, says that he did not accept the money in consideration for his failure to do or promise to do or refrain from doing any act in his official capacity and states that all he did was to walk into the office, utter some remarks which could be interpreted in many different ways, and leave the office with the $25 given him by the owner of the tow truck. We reject this argument. The reasoning in *People v. Clemons* (1962), 26 Ill. 2d 481, 187 N.E.2d 260, is controlling. In *Clemons*,

two deputy sheriffs of Cook County came across a car parked under a viaduct on the southside of Chicago at 1:30 a.m. Inside the car were five males and a 13-year-old female who was partially disrobed and had been beaten. One of the men fled from the car. The defendants told the four remaining men that they would let them go, but could not do so without receiving some remuneration. After $20 were given to the sheriffs, the men were told to leave and to never come back. Defendants' main contention on appeal was that since the People had failed to prove a specific duty on their part to effectuate an arrest, they could not be held culpable for having accepted a bribe and, at best, could have been found guilty only of extortion or malfeasance. The court rejected their contention and stated:

> "The essence of the crime of bribery is the giving to, and receiving or acceptance by, a public officer of something of value to influence him in the performance of his official duty, whether it be called general or specific. Whether or not arrest would be made, the very actions and words of the officers caused the four men to believe there would be, and the officers solicited a bribe to prevent the arrest." (26 Ill. 2d 481, 483.)

Here, also, we conclude that the testimony was sufficient to establish that the defendant made Perry believe that he would have issued him a traffic citation or exercised his authority as a police officer to Perry's detriment in some manner. Whether he would have actually issued a traffic citation is immaterial since Perry was so intimidated by his attempt to solicit a bribe that Perry felt forced to call upon the Internal Affairs Division of the Chicago Police Department for aid. (*People v. Patillo* (1944), 386 Ill. 566, 54 N.E.2d 548.) It is apparent that the defendant accepted money which influenced him to refrain from carrying out his general duty to issue Perry a traffic citation.

Defendant relies upon *People v. Jordan* (1st Dist. 1973), 15 Ill. App. 3d 672, 304 N.E.2d 713, for support of his contention that the $25 received was a mere gratuity and that his criminal intent or that he was acting in his official capacity was not established. In *Jordan* there was no evidence introduced that proved any criminal intent or that the officer performed an act which related to his official capacity; a police officer was merely accused of accepting a remuneration for summoning a particular ambulance service. However, we find the facts of the *Jordan* case inapplicable to this case.

Defendant also contends he was denied his constitutional right to effective assistance of counsel. He argues that his counsel's incompetence was manifested by counsel's decision to stipulate to the grand jury and preliminary hearing transcripts as evidence at trial and his failure to raise the affirmative defense of entrapment at trial.

In order to establish a constitutional inadequacy of trial counsel, a defendant must demonstrate both actual incompetence of counsel as reflected by the manner of carrying out his duties as trial counsel and substantial prejudice resulting therefrom without which the outcome would probably have been different. (*People v. Gill* (1973), 54 Ill. 2d 357, 363-64, 297 N.E.2d 135, *cert. denied*, 414 U.S. 1144, 39 L. Ed 2d 100, 94 S. Ct. 897; *People v. Harper* (1969), 43 Ill. 2d 368, 374, 253 N.E.2d 451.) Furthermore, it has been stated that "matters going to the exercise of judgment and discretion and trial tactics are insufficient to establish the incompetence of counsel." (*People v. Newell* (1971), 48 Ill. 2d 382, 387, 268 N.E.2d 17.) Incompetency of counsel such as to constitute denial of a defendant's right to effective assistance of counsel is conduct of such defective character as to make the defense a farce. *People v. Dean* (1964), 31 Ill. 2d 214, 218, 201 N.E.2d 405.

■■ It is our conclusion, after reviewing the record that retained defense counsel's decision to stipulate to the introduction of the grand jury and preliminary hearing transcripts was based on trial tactics and did not establish incompetence. Further, this court has expressed a policy that all counsel, prosecution and defense, owe a duty to the trial court to simplify the proceedings by stipulating to matters of record that are readily susceptible of proof. (*People v. Henderson* (1st Dist. 1971), 2 Ill. App. 3d 401, 276 N.E.2d 372.) Defense counsel made a tactical decision that was consistent with his legal argument. He argued that the defendant did not violate the law by accepting $25. The facts asserted in the testimony of the State's principal witness, Robert Perry, were uncontradicted. The trial judge, therefore, was faced only with the task of deciding the legal issues based on stipulated evidence.

■■■ The defense of entrapment may not be raised for the first time on appeal. (*People v. Redding* (1963), 28 Ill. 2d 305, 192 N.E.2d 341; *People v. Outten* (1958), 13 Ill. 2d 21, 147 N.E.2d 284.) The failure to raise the question in the trial court will be regarded as a waiver of it. Defendant says that the question was not raised because of his trial counsel's incompetence. Fatally weakening this position, however, is the logically required rule that one cannot deny the commission of an offense and then at the same time claim entrapment. (*People v. Fleming* (1971), 50 Ill. 2d 141, 277 N.E.2d 872; *People v. Anthony* (1963), 28 Ill. 2d 65, 190 N.E.2d 837; *People v. Realmo* (1963), 28 Ill. 2d 510, 192 N.E.2d 918.) Here the defendant denied violating the law. Counsel demonstrated professional competence and legal understanding in not attempting to claim entrapment.

■■ Finally, defendant contends that although charges against him were dismissed at his preliminary hearing, he was still indicted by the grand jury and subsequently determined to be guilty of those charges by

the court. He argues that his previous finding of no probable cause should have caused a reasonable doubt of guilt in the subsequent trial. There is no merit to defendant's claim. It is the function of the court to rule on the sufficiency of the evidence at trial and the court is in no manner bound by the previous determination of no probable cause at a preliminary hearing when that finding has been superseded by a subsequent indictment on the same charges. *People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710.

For the above reasons, we affirm the judgment of the Circuit Court of Cook County.

Judgment affirmed.

MEJDA and LORENZ, JJ., concur.