161 N.J. Super. 53 (1978)
390 A.2d 1186
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CAROL BRANAM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1978.
Decided July 14, 1978.
*54 Before Judges LYNCH, BISCHOFF and KOLE.
Mr. Philip Vernon, Designated Counsel, argued the cause for appellant (Mr. Stanley C. Van Ness. Public Defender, attorney).
Mr. Rocky Peterson, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General, attorney; Mr. Anthony J. Parrillo, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant appeals from her conviction after jury trial of possession of marijuana (N.J.S.A. 24:21-20a(3)) (count I), possession of marijuana with intent to distribute (N.J.S.A. 24:21-19a(1)) (count II), and distribution of marijuana (N.J.S.A. 24:21-19a(1)) (Count III). On count I defendant was sentenced to the Middlesex County Workhouse for a period of 12 months (suspended) and placed on probation for two years. After merging count II and count III the trial judge sentenced defendant on the latter count to 12 months in the workhouse (suspended) and two years probation, concurrent to the sentence on count I.
On appeal defendant contends:
POINT I The trial court's charge on entrapment was erroneous.
A. The trial court incorrectly charged the jury on the defense of entrapment and the effect of predisposition;

*55 B. The entrapment charge negated the appellant's defense that she did not have the intent to commit a crime (not raised below);
POINT II The sentence imposed by the trial court was excessive.
POINT III The trial court's comments on the evidence were incorrect, and the appellant was therefore denied a fair trial.

I

The charge concerning entrapment

(A) Retroactive application of State v. Talbot, 71 N.J. 160 (1976)
After each side had rested defendant requested the trial judge to charge the jury on the issue of entrapment pursuant to State v. Talbot, 71 N.J. 160 (1976), which had been decided after the events giving rise to defendant's conviction but approximately two months before the trial.
So far as relevant to the issue of entrapment the testimony established the following facts:
On February 18, 1975 Richard Wenskowski, an undercover narcotics officer for the Edison Police Department, was approached by one Anthony Cavezza, an "informant" with whom Wenskowski had had dealings in the past. As a result of his conversation with Cavezza, Wenskowski placed a telephone call to Big Mac's Tavern in Linden and asked for Carol Branam, defendant. A woman shortly came to the phone, identified herself as "Carol" and Wenskowski thereupon engaged her in a conversation concerning the sale of some marijuana. As Wenskowski stated, "She told me that she could sell me four ounces of marijuana this evening, that being later on in the evening." Wenskowski then told "Carol" to meet him in Room 102 of the Holiday Inn in Edison, where the transaction would be consummated.
Thereafter, Wenskowski checked into the Holiday Inn and registered under the name of Richard Wesley. At about 1 A.M. Lorraine Holcomb, defendant and Cavessa arrived at the room. Lorraine Holcomb handed the officer a brown *56 paper bag which contained four plastic bags of a substance later identified as three ounces of marijuana. Wenskowski opened the bag and then gave $65 to defendant.[1]
At the conclusion of the State's case defendant elected to testify and stated that she never spoke with anyone on the phone from Big Mac's Tavern concerning a sale of marijuana. She added that earlier in the evening "Johnny," a friend of Lorraine Holcomb, came over to the apartment defendant shared with Lorraine and brought with him the marijuana that was eventually sold to Wenskowski. Johnny "was supposed to meet [Cavezza]" there and, indeed, handed Cavezza the marijuana and left. Cavezza then asked either Lorraine or defendant to hold the marijuana and Lorraine took it.
Later, defendant, Lorraine and Cavezza went to the Holiday Inn in Edison. At the time she knew that Lorraine had the marijuana and that "Lorraine was going to sell four ounces of marijuana to Wesley." Defendant testified that when they arrived at the motel "Wesley" gave the $65 to Lorraine who, in turn, handed it to Cavezza. She denied that she accepted the money from the officer or that she was in any way involved in the transaction.
It is undisputed that Cavezza  the informer  "arranged the sale" of the marijuana by supplying defendant's name to a narcotics officer and suggesting that he might contact defendant for a purchase. Further, it appears that "Johnny"  the original source of the substance  had given it to Cavezza, who, in turn, gave it to defendant's companion to hold. Lastly, defendant testified that her companion had turned the money over to Cavezza shortly after the sale took place.
*57 Such testimony, if believed by a jury, gives rise to a set of facts within the pattern of State v. Talbot, supra. Thus it was that defense counsel, with that decision in hand, requested the judge to charge the jury:
An informer, acting in concert with law enforcement authorities, arranges a sale of a controlled dangerous substance which the informer himself jointly possessed with the defendant or has furnished to the defendant, which sale is then consummated, the defendant has been entrapped notwithstanding that the joint possession or the furnishing thereof is unknown to or even contrary to the instruction of law enforcement authorities. Those law enforcement authorities bear the onus of their informer's method of operation.
The defendant is entitled to a verdict of acquittal if you, the jury, are not satisfied beyond a reasonable doubt that Anthony Cavezza did not have constructive or joint possession of or furnish to the defendant the substance marked S-2 in evidence.
If you have a reasonable doubt that Anthony Cavezza either furnished to the defendants or had joint possession with the defendants of the marijuana, Carol Branam is entitled to an acquittal even were you to find that they jointly possessed or aided and abetted the possession or distribution of S-2.
The trial judge refused to so charge on the ground that the request omitted what he considered to be a "critical" element of the defense of entrapment, namely, whether defendant had a "predisposition" to commit the offense. And he then charged that, irrespective of the acts of the informer Cavezza, if the jury believed that defendant had a predisposition to commit the crime, the defense of entrapment had not been established. In denying defendant's requested charge on entrapment and in charging that defendant's "predisposition" controlled, the trial judge did not follow the principle of Talbot, where the Supreme Court said:
We hold that where an informer or other agent generally acting in concert with law enforcement authorities, furnishes a defendant with heroin for the purpose of then arranging a sale of the heroin by the defendant to an undercover officer, which sale is then consummated, defendant has been entrapped as a matter of law even though predisposition to commit the crime may appear, and notwithstanding that the furnishing of the heroin is unknown to and contrary *58 to the instructions of the law enforcement authorities. Those authorities, having set the agent to work in enticing the defendant, the prosecution should bear the onus of the means selected by the agent. [70 N.J. at 168]
However, the Talbot court agreed with the Appellate Division that, despite the uncontradicted testimony of the informant and defendant that the informant had supplied the heroin, the jury could have chosen to disbelieve such testimony and thus a jury issue was presented concerning the credibility of the entrapment evidence. 71 N.J. at 165, 169.
Nevertheless, the State herein contends that because Talbot was handed down 18 months after commission of the instant offenses, a charge in conformity with that opinion would give to it an impermissible retroactive effect. The State asserts that Talbot merely sets forth a prophylactic rule designed to deter unacceptable police conduct and that, because the police action here is beyond deterrence, retroactive application of the rule would be meaningless. It adds that the police here had also relied in good faith upon the state of the law prior to Talbot which gave no indication that such conduct contravened "fundamental fairness."
We disagree. Without enumerating the many considerations which may determine whether or not a decision is to have retroactive effect, and the many decisions concerning them, we determine that the Talbot rule applies to all cases then pending for trial or on direct appeal. We note that the Talbot court did not declare that its decision was to have only prospective effect. See State v. Deatore, 70 N.J. 100, 119 (1976). Moreover, in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which considered whether Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should be applied to state court convictions which had become final before that decision was rendered, the court indicated that the general rule is that appellate courts ordinarily will give effect to the state of the law as it exists at the time of the appeal, thus giving retroactive effect to a decision at least insofar as *59 such decision may affect cases on direct appeal at the time it is rendered. See Walker v. N.J. Dept. of Inst. & Agencies, 147 N.J. Super. 485, 489 (App. Div. (1977)), and cases cited therein. And we consider that fundamental fairness requires the conclusion that defendant here was entitled to the law as it existed at the time of the trial.

(B) Entrapment and intent.

Defendant contends that in instructing the jury on the defense of entrapment, the trial judge erroneously charged:
Now, under that contention that she was entrapped she is, in effect, saying that she does not deny that there was a violation of the criminal law; she does not deny that she was part and parcel of a series of crimes that were committed that night; that she did possess, that she did possess with intent to distribute, and that she did distribute, but that the methods employed by the enforcement officials were unconscionable and contrary to public policy.
This, says defendant, effectively negated her defense that she did not intend to commit the crimes charged. The State argues that such charge was proper since one cannot simultaneously deny guilt and claim the defense of entrapment. We address this issue because of the possibility that it may arise at a new trial.
While there is an absence of case law in this jurisdiction on whether a criminal defendant may assert the defense of entrapment and at the same time deny that he committed the offense, the Supreme Court in State v. Dolce, 41 N.J. 422, 430-431 (1964), in discussing entrapment, noted: "In such situation although the violation of the criminal law is not denied, 22 C.J.S. Criminal Law § 45(1), p. 137 (1961), conviction of the defendant cannot be had because the methods employed by the enforcement officials are unconscionable and contrary to public policy." Such dictum would seem to indicate that New Jersey is among those jurisdictions which hold that entrapment and denial may not be asserted simultaneously. See, e.g., People v. Bouse, 46 Ill. App.3d 465, 4 Ill. Dec. 907, 913, 360 N.E.2d 1340, *60 1346 (App. Ct. 1977); State v. Montano, 117 Ariz. 145, 571 P.2d 291, 294 (Ct. App. 1977); Messelt v. State, 351 So. 2d 630, 633 (Ala. Cr. App. 1977); State v. Williams, 542 S.W. 2d 3, 6 (Mo. Ct. App. 1976); see 22 C.J.S. Criminal Law § 45(1) (1961). Nonetheless, we cannot conclude that the offhand reference to this principle in Dolce was meant to be a definitive statement on the subject by the Supreme Court. Therefore, under the assumption that the reference in Dolce is merely dictum, the court is free to examine cases in other jurisdictions which have considered this issue.
The principle which precludes the simultaneous assertion of these defenses is predicated upon the "logically required rule that one cannot deny the commission of an offense and then at the same time claim entrapment." People v. Bouse, supra, 4 Ill. Dec. at 913, 360 N.E.2d at 1346. However, several cases persuasively demonstrate that this alleged "logical" inconsistency is, in fact, illusory. For example, in People v. Perez, 62 Cal.2d 769, 44 Cal. Rptr. 326, 401 P.2d 934 (Sup. Ct. 1965), Chief Justice Traynor reversed defendant's conviction for possession of marijuana and flatly rejected the State's contention that entrapment is unavailable to a defendant who denies commission of the offense charged:
We disagree with the Attorney General's contention that to invoke the defense of entrapment a defendant must admit committing the criminal acts charged. Although the defense is available to a defendant who is otherwise guilty (People v. Benford, 53 Cal. 2d 1, 9, 345 P.2d 928), it does not follow that the defendant must admit guilt to establish the defense. A defendant, for example, may deny that he committed every element of the crime charged, yet properly allege that such acts as he did commit were induced by law enforcement officers. (People v. West, 139 Cal. App.2d Supp. 923, 926, 293 P.2d 166; Henderson v. United States (5th Cir.) 237 F.2d 169, 173, 61 A.L.R.2d 666.) Moreover, a defendant may properly contend that the evidence shows unlawful police conduct amounting to entrapment without conceding that it also shows his guilt beyond a reasonable doubt. When the evidence does show such conduct, the court has a duty to root its effects out of the trial upon its own initiative if necessary. (See Sorrells v. United States, 287 *61 U.S. 435, 453, 457, 53 S.Ct. 210, 77 L.Ed. 413 [Roberts, J., concurring].) Entrapment is recognized as a defense because "the court refuses to enable officers of the law to consummate illegal or unjust schemes designed to foster rather than prevent and detect crime." (People v. Benford, 53 Cal.2d 1, 9, 345 P.2d 928, 933; see People v. Cahan, 44 Cal.2d 434, 445-446, 282 P.2d 905, 50 A.L.R.2d 513.) A rule designed to deter such unlawful conduct cannot properly be restricted by compelling a defendant to incriminate himself as a condition to invoking the rule. Thus, the defendant may challenge the legality of a search and seizure without admitting that the property seized was taken from him and without asserting a proprietary interest in the premises entered. (People v. Ibarra, 60 Cal.2d 460, 465, 34 Cal. Rptr. 863, 386 P.2d 487; People v. Martin, 45 Cal.2d 755, 759-761, 290 P.2d 855.) To compel a defendant to admit guilt as a condition to invoking the defense of entrapment would compel him to relieve the prosecution of its burden of proving his guilt beyond a reasonable doubt at the risk of not being able to meet his burden of proving entrapment. To put the defendant in that dilemma would frustrate the assertion of the defense itself and would thus undermine its policy. [44 Cal. Rptr. at 329, 401 P.2d at 937-938].
See also, United States v. Demma, 523 F.2d 981 (9 Cir.1975), which overruled prior case law in that circuit precluding the simultaneous assertion of these defenses. Besides demonstrating the false theoretical basis for the principle, Demma suggested that continued adherence to it generates several constitutional problems, including possible violation of a defendant's right to his presumption of innocence and his right to have the government prove the elements of the crime beyond a reasonable doubt. 523 F.2d at 986. See Groot, "The Serpent Beguiled Me and I (Without Scienter) Did Eat  Denial of Crime and the Entrapment Defense," 1973 U. of Ill. Law Forum, 254. See also, United States v. Hart, 546 F.2d 798 (9 Cir.1976), cert. den. 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977); People v. Johnston, 47 A.D.2d 897, 366 N.Y.S.2d 198 (1975). Compare State v. Mathis, 47 N.J. 455, 467 (1966), aff'd 52 N.J. 238 (1968), rev'd on other grounds, 403 U.S. 946, 91 S.Ct. 2277, 29 L.Ed.2d 855 (1971), reh. den. 404 U.S. 876, 92 S.Ct. 31, 30 L.Ed.2d 125 (1971).
*62 Further, we fail to find any real inconsistency where, as here, defendant contends that she intended to commit no crime and that the acts which might give rise to an inference of intent were induced by an agent of the State. In United States v. Greenfield, 554 F.2d 179 (5 Cir.1977), defendant, a physician, was convicted of illegally prescribing controlled drugs. The trial judge refused to charge the jury on entrapment unless defendant admitted "the commission of the crime." The Circuit Court reversed and noted:
So, too, in the instant case we are persuaded that the defendant should be permitted to deny commission of any crime and also raise the defense of entrapment. The defendant in this case readily admitted to the physical acts alleged to constitute the offense. The sole contested issue at trial was the intent with which the acts were committed. The defendant strenuously asserted that the prescriptions to Ms. Conner were for a legitimate medical purpose and within the course of his professional practice. Necessarily, the issue of criminal intent or guilty knowledge was a factual issue for the jury to resolve on the basis of circumstantial evidence under the totality of the circumstances. It was a subjective determination.
We do not believe that it is impermissibly inconsistent under these circumstances for a defendant also to argue that to the extent that the jury may find culpability on his part, he was entrapped. The defendant may say, "I did not go so far as to prescribe drugs without a legitimate medical purpose, but to the extent that you find that I did, I was entrapped." [at 182-183]
Accord: Henderson v. United States, 237 F.2d 169, 173 (5 Cir.1956); see State v. Amodei, 222 Kan. 140, 563 P.2d 440, 443-445 (Sup. Ct. 1977); cf. Sorrells v. United States, 287 U.S. 435, 452, 53 S.Ct. 210, 77 L.Ed. 413 (1932).[2]
We find that the trial judge erred when he instructed the jury that in asserting the defense of entrapment, defendant admitted committing the crimes charged. As noted earlier. *63 not only is the theoretical foundation of that principle in error, but also it is questionable whether there exists any "logical" inconsistency herein which would warrant its application to defendant.

II.

The sentences and prosecutor's comments
Since we have reversed the convictions we need not reach defendant's contentions that the sentences were manifestly excessive or that the prosecutor's comments denied defendant a fair trial.
Reversed.
NOTES
[1] Wenskowski admits, however, that he stated in his report and to a fellow officer at the scene providing "back-up" that he had given the money to Lorraine.
[2] See United States v. Demma, supra, 523 F.2d at 982-984, which holds that Chief Justice Hughes in Sorrells * * * "expressly rejected the Government's contention that a claim of entrapment necessarily involved an admission of guilt and that it was in the nature of a plea in bar." 523 F.2d at 983.